MINNESOTA BAPTIST CONVENTION v. PILLSBURY
ACADEMY AND OTHERS.
DR. R. V. CLEARWATERS AND OTHERS,
RESPONDENTS.
DR. WILLIAM MURK AND OTHERS,
ADDITIONAL DEFENDANTS.[1]

December 23, 1955.

No. 36,617.

---

[1]Reported in 74 N. W. (2d) 286.

*Dorsey, Colman, Barker, Scott & Barber,* for appellants.
*Harry H. Peterson* and *William H. Eckholdt,* for respondents.

DELL, CHIEF JUSTICE.

This is an appeal from a judgment entered in the District Court of Hennepin County in a declaratory judgment action.

Minnesota Central University, under the patronage of the Minnesota Baptist Association, was incorporated by the Minnesota territorial legislative assembly in 1854. L. 1854, c. 36. The act provided that the university should be located on the west side of the Mississippi River between the mouth of the Rum River and Lake Pepin. In 1857 the university located at Hastings where it operated until, because of economic conditions, it lost its real estate under foreclosure in 1861. The 1854 act specifically named and designated some of the trustees of the university and provided that all others should be elected by the Minnesota Baptist Association. The act was amended in 1867 so as to make the board of trustees self perpetuating. L. 1867, c. 9. From 1867 to 1878 the university conducted no classes but the trustees elected their successors each year through 1877.

In 1878, under Sp. L. 1878, c. 69, and in the form of an amendment to the 1854 act, there was established in the city of Owatonna an institution of learning under the name of Minnesota Academy. Eighteen persons were named and designated as trustees in the act itself and the act provided that they and their successors were created as a body politic and corporate to be styled the Trustees of Minnesota Academy and to remain in perpetual succession. It further provided that vacancies by resignation or otherwise should

be filled by the board. The trustees were authorized to change the name of the academy whenever authorized to do so by the Baptist State Convention of Minnesota. This corporation took over the assets of Minnesota Central University and erected a building at Owatonna where it has since been established as an academy conducting classes in secondary education. From 1878 to 1887 inclusive the trustees of the academy perpetuated themselves by electing their own successors to fill vacancies caused by expiration of terms or otherwise.

In 1887, under the provisions of the 1878 act, with the consent of the Minnesota Baptist State Convention, the name of Minnesota Academy was changed to Pillsbury Academy in honor of George A. Pillsbury who had been a benefactor of the academy. The change was confirmed by Sp. L. 1887, c. 330. Since then the corporation has been known by that name.

In 1887 the legislature, by Sp. L. 1887, c. 89, amended § 8 of the 1854 act as amended by Sp. L. 1878, c. 69, § 6, by striking from it the following: "Vacancies by resignation or otherwise shall be filled by the board" and amended § 10 of the 1854 act so as to read as follows:

"Section 10. This institution shall forever be under the patronage of the Minnesota Baptist State Convention, which convention shall, at its annual meeting, fill all vacancies in the board of trustees caused by the expiration of the term of office of any of said board, or by death, resignation, removal from the state or otherwise, and shall have power to remove any trustee from said board. Said convention shall also, at said annual meeting, elect three (3) suitable persons who shall be known as a board of visitors to said academy, whose duty it shall be to attend the examination of students, look after the condition of the institution and report to the next annual meeting of the Minnesota Baptist State Convention."[2]

[2]By an amendment to its articles filed with the secretary of state on March 9, 1920, the name of Minnesota Baptist State Convention was changed to Minnesota Baptist Convention.

The legislature, by Sp. L. 1889, c. 133, confirmed the rights and powers granted under Sp. L. 1887, c. 89.

From 1887 until 1952, a period of 65 years, the Minnesota Baptist Convention each year elected the trustees of the academy, the persons so elected having been recommended to the convention by the trustees of the academy. There were three exceptions, one in 1935 and another in 1936. It is not clear from the record as to how the vacancies were filled in those two years. The third exception occurred in 1945 due to the fact that no convention was held in that year.

Differences of opinion arose between various groups within the Baptist denomination which need not be set forth here. However, as a result of those differences, in the year 1952 the Minnesota Baptist Convention ignored the recommendations of the trustees of the academy and elected five persons as trustees of its own independent selection.

On June 10, 1953, five members of the board of trustees of the academy, purporting to act under the Minnesota Nonprofit Corporation Act, requested the president to call a special meeting of the trustees to consider a resolution amending the articles of the corporation so as to confirm the 18 persons then constituting the board as members of the trustees of Pillsbury Academy; to empower them to elect their successors and to appoint and employ all officers, teachers, and agents for the institution; to confirm the patronage of the Minnesota Baptist Convention permitting it to elect three persons as a board of visitors to attend the examination of students, look after the condition of the institution, and to report to the next annual meeting of the convention. On June 11 notice of such meeting was given by the president.

On June 24 plaintiff, Minnesota Baptist Convention, commenced this action and obtained an order to show cause returnable June 26 as to why a temporary injunction, preventing the holding of the special meeting, should not be issued. Upon the hearing of the motion, plaintiff's application for a temporary injunction was denied.

On July 13 the special meeting of the trustees was held and the amendments embodied in the resolution were purportedly adopted.

The purported articles of amendment were filed in the office of the secretary of state on July 17. The trustees of Pillsbury Academy held their annual meeting at Owatonna on July 29. At that meeting eight trustees were purportedly elected by them. The Minnesota Baptist Convention held its annual convention during August 1953 at which time it passed resolutions purporting to reject the provisions of the Minnesota Nonprofit Corporation Act and to disaffirm the election of trustees chosen by the trustees of the academy. The convention also purported to elect eight trustees of its own selection to act as the trustees of the academy. Thereafter the eight so purportedly elected by the convention were by stipulation joined as additional parties defendant and amended and supplemental complaints were served and issue joined. The purpose of the action in its final form was to obtain a declaratory judgment as to the status of the respective parties and the validity or invalidity of the proceedings taken by them.

Upon the trial the plaintiff prevailed and a declaratory judgment was entered substantially in accordance with its contentions. The real controversy between the parties concerns the management and control of the academy and who are its lawful trustees. The answer to the problem as we see it, depends primarily upon the constitutionality of Sp. L. 1887, c. 89, and Sp. L. 1889, c. 133.

Defendants-appellants claim that Sp. L. 1887, c. 89, and Sp. L. 1889, c. 133, are unconstitutional. These special laws took from the trustees of Pillsbury Academy and placed in the Minnesota Baptist State Convention the right to elect the members of the board of trustees of the academy. Defendants-appellants contend that these laws are in violation of and prohibited by the provisions of Minn. Const. art. 4, § 33, as enacted November 8, 1881. The pertinent subdivisions of that section are as follows:

"The legislature is prohibited from enacting any special or private laws in the following cases:

\* \* \* \* \*

*"Seventh.* For granting corporate powers or privileges, except to cities.

\* \* \* \* \*

*"Tenth.* For granting to any individual, association or corporation, except municipal, any special or exclusive privilege, immunity or franchise whatever.

\* \* \* \* \*

"But the legislature may repeal any existing special law relating to the foregoing subdivisions."[3]

In the lower court it appears that the defendants-appellants relied principally on subd. 7 of § 33 while on this appeal they rely chiefly on subd. 10 of said section. Up to now we have had no occasion to interpret the meaning of subd. 10, but the meaning of subd. 7 has been previously construed by this court. It was first interpreted in the case of Brady v. Moulton, 61 Minn. 185, 63 N. W. 489. That case involved an action to enjoin the payment of village water bonds on the ground that the act authorizing their issuance was void because within the inhibition of Minn. Const. art. 4, § 33, subd. 7, as enacted in 1881. This court, speaking through Mr. Justice Mitchell, stated (61 Minn. 186, 63 N. W. 489):

"\* \* \* The constitutional amendment of 1881 was, with certain changes, not material here, copied bodily from the constitutional amendment of 1871 in the state of Wisconsin, subdivision 7 (the one here involved) being verbatim subdivision 7 of the amendment of

---

[3]Art. 4, § 33, was amended in 1892 to read in part as follows:

"Sec. 33. In all cases when a general law can be made applicable no special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined without regard to any legislative assertion on that subject. The legislature shall pass no local or special law \* \* \*; creating corporations, or amending, renewing, extending or explaining the charters thereof; granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever, or authorizing public taxation for a private purpose; \* \* \*. The legislature may repeal any existing special or local law, but shall not amend, extend or modify any of the same."

1871 in that state. In 1874—seven years before we adopted it—this subdivision had been construed by the supreme court of Wisconsin as relating only to acts of incorporation thereafter to be granted, and as not impairing the legislative power of *alteration* or *repeal* in respect to charters granted prior to the adoption of the constitutional amendment. Attorney General v. Railroad Cos., 35 Wis. 425, 560. In that case, Chief Justice Ryan, speaking for the court, said: 'We feel bound to hold, and find no difficulty in holding, the phrase in the amendment, "to grant corporate powers or privileges," to mean "in principio donationis," and equivalent to the phrase, "to grant corporate charters." This is implied not only by the word "grant," but also by the word "corporate." A franchise is not essentially corporate; and it is not the grant of franchise which is prohibited, but of corporate franchise,—that is, as we understand it, franchise by act of incorporation.'

"This construction has been uniformly adhered to by the courts of that state. From 1881 down to the adoption of the much more sweeping and radical amendment of 1891, the legislature of this state assumed and acted upon the same construction. The acts are very numerous amending by special law the special charters of villages organized prior to 1881. Large interests are doubtless now dependent upon the validity of such legislation. To now declare it invalid would result in very serious consequences. In view of these facts, we are of opinion that, whether this construction, considered as a new question, is right or wrong, it ought now to be followed and adhered to. An additional reason for such a conclusion is the fact that such a construction can only affect the past, inasmuch as the amendment of 1881 on the subject of special legislation has been superseded by the more sweeping one of 1891, adopted in November, 1892." (Italics supplied.)

In the Brady case this court followed the construction placed upon subd. 7 by the Supreme Court of Wisconsin and held that art. 4, § 33, subd. 7, as enacted in the 1881 amendment to our constitution was prospective in operation only from the date of its adoption and that it did not apply to or affect corporations in existence under

laws passed prior to the adoption of the constitutional amendment of 1881.

The case of State v. Wiswell, 61 Minn. 465, 63 N. W. 1103, involved questions growing out of proceedings to enforce the collection of taxes assessed and levied on a certain tract of land in Wadena County. The village of Wadena was incorporated and its territorial limits fixed by Sp. L. 1881, c. 46. Sp. L. 1885, c. 30, amended Sp. L. 1881, c. 46 so as to extend the limits of the village to include the land in controversy. The landowner claimed that the act of 1885 was repugnant to Minn. Const. art. 4, § 33, subds. 7 and 9, as enacted in 1881. Mr. Justice Collins, speaking for the court, stated (61 Minn. 466, 63 N. W. 1103) :

"Subdivision 7 prohibited the passage of any special law granting corporate powers or privileges, except to cities, while subdivision 9 was a prohibition upon the enactment of any special law incorporating towns or villages. Certainly there was no attempt by the amendment of 1885 to the village charter to incorporate either town or village, hence subdivision 9 was not encroached upon, and, following Attorney General v. Railroad Companies, 35 Wis. 425, 558, we held, in the very recent case of Brady v. Moulton, supra, p. 185, 63 N. W. 489, that subdivision 7 related only to acts of incorporation thereafter to be granted, and that it did not impair the legislative power of *alteration* or *repeal* in respect to charters granted prior to the adoption of the constitutional amendment; also, that the language of subdivision 7 was equivalent to the phrase, 'to grant corporate charters.' " (Italics supplied.)

This court, in the Brady case, in adopting the construction placed upon subd. 7 by the Supreme Court of Wisconsin and in reaffirming that construction in the Wiswell case, did nothing more than to follow the well-recognized rule of construction that, where a constitutional provision has been taken from another state after the court of last resort of that state has construed the provision, the construction placed upon it by the court of such state is presumed to be

adopted with the provision.[4] In the field of statutory construction where statutes are taken from other states, a similar rule prevails.[5]

Defendants-appellants contend that the Brady case should not be followed and is demonstrably unsound since the Wisconsin constitution contained a provision not found in the Minnesota constitution specifically reserving to the legislature the right to alter or repeal special acts at any time after their passage.[6] They assert that the decision in the case of Attorney General v. Railroad Companies, 35 Wis. 425, was based on this reserved power found in the Wisconsin constitution and that consequently the reasoning of the Brady case is fallacious. An examination of the case of Attorney General v. Railroad Companies, *supra*, shows, however, that the Wisconsin court did not rely on the reserved power to alter or repeal all general laws or special acts contained in Wis. Const. art. 11, § 1, in reaching its decision, but to the contrary, relied solely on the meaning of the wording of subd. 7 of the 1871 amendment to the Wisconsin constitution. This is clearly manifested by the language of the Wisconsin court (35 Wis. 559): "We shall not stop to dwell here on the importance of the reserved power. We may do that later, in a more appropriate connection."[7]

[4] 11 Am. Jur., Constitutional Law, § 68 (citing cases from several jurisdictions).

[5] Nicollet Nat. Bank v. City Bank, 38 Minn. 85, 35 N. W. 577; 50 Am. Jur., Statutes, § 458.

[6] Wis. Const. art 11, § 1, reads as follows: "Corporations without banking powers or privileges may be formed under general laws, but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the legislature, the objects of the corporation cannot be attained under general laws. *All general laws or special acts enacted under the provisions of this section may be altered or repealed by the legislature at any time after their passage.*" (Italics supplied.)

[7] In Attorney General v. Railroad Companies, *supra*, the court later in the opinion devoted 22 pages to reviewing the background and purpose of the reserved power clause contained in Wis. Const. art. 11, § 1 (pages 562 to 584). It cited the opinion of the United States Supreme Court in Dartmouth College v. Woodward, 17 U. S. (4 Wheat.) 518, 4 L. ed. 629, holding that the charter of any corporation, not municipal, was a contract within the provision of the United States constitution prohibiting the impairment of the

It is again indicated where the court stated (35 Wis. 560.) :

"But the purpose of the amendment, so far as it affects Sec. 1, art. XI, appears to us very manifest. It was designed to act on the first clause only of the section, taking away the legislative discretion and changing the directory provision into a prohibitory one; and not to touch the second clause of the section at all, leaving the reserved power where it found it, to be exercised thereafter as theretofore, upon special charters, by special acts. *The amendment is prospective only, not retrospective. It prohibits an old way and provides a new way of creating corporations, but was not designed to affect existing corporations in any way.*" (Italics supplied.)

Thus the Brady case holding that subd. 7 was prospective in its operation and not retrospective is, in fact, a well-reasoned and sound opinion based upon and supported by generally recognized rules of construction.

In the instant case Pillsbury Academy was a corporation chartered and in existence prior to the year 1881. Until the passage of the special acts of 1887 and 1889 the trustees of the academy were authorized to determine who their successors would be. The special acts of 1887 and 1889 amended the charter of the academy so as to change the method of selection of the trustees by giving that right to the Minnesota Baptist State Convention. Since subd. 7 was not designed to affect existing corporations in any manner and, consequently, did not prohibit amendments to the charters of corporations in existence in 1881, we hold that the special acts of 1887 and 1889 were not in violation of that subdivision of the 1881 amendment to our constitution.

Defendants-appellants argue that the special acts of 1887 and 1889 were, in effect, an attempted grant of a privilege or franchise to the Minnesota Baptist State Convention disguised in the form of an amendment to the academy's charter. Their contention is that this

obligation of contracts and thus could not subsequently be amended by the legislature against the will of the corporation. The court concluded that the reason for and purpose of the reserved power clause in the constitution was to offset the effect of the Dartmouth College opinion.

grant was unconstitutional because it was prohibited by and in violation of Minn. Const. art. 4, § 33, subd. 10, as enacted in 1881. They point out that subd. 10 was not taken from the Wisconsin 1871 constitutional amendment but was a new and additional provision which they claim is more sweeping in its language and speaks for itself; that there is no Wisconsin precedent for this provision; and that it should, therefore, be construed without regard to the construction placed upon subd. 7 in the Brady[8] case.

The last clause of the 1881 amendment, which reads: "But the Legislature may repeal any existing special law relating to the foregoing subdivisions," refers and applies to all the subdivisions of the amendment from 1 to 11 inclusive and thus equally affects subds. 7 and 10. Defendants-appellants predicate no rights upon the quoted language and have not urged that it compels any particular construction of subd. 10 or conclusion with respect thereto. Both subds. 7 and 10 were adopted at the same time as a part of the same constitutional amendment. In Brady v. Moulton, *supra,* and in State v. Wiswell, *supra,* we held, following Attorney General v. Railroad Companies, *supra,* as previously pointed out, that subd. 7 did not impair the legislative power either to repeal or amend charters granted prior to the 1881 amendment. Both subds. 7 and 10 relate to the granting of franchises, but with this difference, that the former relates to those of a "corporate" character and the latter to "any special or exclusive" franchise. Thus the two subdivisions are so related as to subject matter as to be in pari materia. Accordingly both subdivisions should receive the same construction and be held to be prospective in operation only and not to prohibit either the *repeal* or *amendment* in any manner of corporate charters granted prior to the adoption of the 1881 amendment to the constitution. And this is true regardless of whether the effect of amendments was to bestow a right or privilege on another corporation. Such a construction is in accord with the views of the best informed authorities. As Professor William Anderson states in Anderson, A History of the

---

[8]Because of the decision we have reached, it becomes unnecessary to define the words "privilege," "immunity," or "franchise" as used in Minn. Const. art. 4, § 33, subd. 10.

Constitution of Minnesota, p. 169, concerning art. 4, §§ 33 and 34, as enacted in the 1881 amendment: "neither did they forbid the amendment, modification, or extension of any of the previous special laws." It would be absurd and inconsistent to hold that subd. 10 prohibits what subd. 7 authorizes. Such a holding would be equivalent to saying that the people of the state in one section (subd. 7) authorized such amendments as are here involved and in another section adopted at the very same time (subd. 10) prohibited what they had thus authorized. We should refrain from adopting such an absurd and inconsistent construction of the constitution.

We accordingly hold that Minn. Const. art. 4, § 33, subd. 10, as enacted in 1881, was meant to be prospective in operation only and that it did not prohibit the amendment of the charter of Pillsbury Academy as was done by Sp. L. 1887, c. 89, and Sp. L. 1889, c. 133, for the reason that the charter was granted prior to the adoption of the 1881 amendment and thus not within the scope of its prohibitions.

■ The next question for consideration is the validity of the amendment to the articles of incorporation of the academy purportedly adopted by the trustees on July 13, 1953. This amendment, among other things, provided that the 18 trustees then in office should continue to hold office until their successors were elected and qualified; that the trustees from time to time in office were to constitute the members of the corporation; that at the annual meeting of the corporation to be held in July of each year the members (the then trustees) should elect by majority vote the trustees to take the place of those whose terms expired in that year; and that the trustees should have the power to fill for the unexpired terms vacancies caused by the death, resignation, or otherwise, among them. The effect of this amendment, if valid, was to take from the Minnesota Baptist Convention the right given to it by Sp. L. 1887, c. 89, and Sp. L. 1889, c. 133, to, at its annual meetings, fill all vacancies in the board of trustees caused by the expiration of the term of office of any of said board, or by death, resignation, or otherwise. In attempting to adopt this amendment the trustees of the academy

purported to act under the Minnesota Nonprofit Corporation Act, M. S. A. c. 317 (L. 1951, c. 550).

In their brief defendants-appellants state "If, as we believe we have demonstrated, the Special Acts of 1887 and 1889 are unconstitutional, it would seem to follow that the provisions of the Minnesota Non-Profit Corporation Act are applicable and proceedings had thereunder by defendant the Trustees of Pillsbury Academy are effective to amend its articles and to confirm and to assure the right of self-perpetuation given the trustees by the 1878 Act." Most of defendants-appellants' brief, in support of the validity of the July 13, 1953, amendment is devoted to this contention. Since we hold that the special acts of 1887 and 1889 are constitutional, this phase of defendants-appellants' argument requires no discussion.

Defendants-appellants also contend—although the point is not extensively argued in their brief, nor was it upon the oral argument— that, even if the special laws of 1887 and 1889 are constitutional, still the privilege granted to the Minnesota Baptist Convention to elect the trustees of the academy and to fill all vacancies in the board of trustees is a grant to an "outsider" and hence cannot be a "membership right" within the meaning of the Minnesota Nonprofit Corporation Act and that accordingly the amendment is, nevertheless, valid. We shall address ourselves to this contention.

At the outset, as a background against which the provisions of the Minnesota Nonprofit Corporation Act should be viewed, we consider the comments of the committee which drafted the act. These comments are printed as an introduction to the act in 20 M. S. A. 1954 Cumulative Annual Pocket Part, p. 56. In part they read as follows:

"* * * Recognizing inherent differences between profit and nonprofit corporations, great liberality is allowed for the organizational and internal operational activities of non-profit corporations."

In adopting the purported amendment the trustees attempted to act pursuant to the provisions of M. S. A. 317.27 of the Minnesota Nonprofit Corporation Act. The provisions of that section pertinent here are as follows:

"Subdivision 1. A domestic corporation may amend its articles in the manner prescribed by this section to include or omit any provisions which it could lawfully include or omit from the original articles at the time the amendment is made, or to extend its duration for a further definite time or perpetually. * * *

"Subd. 2. (1) Where there are members with voting rights, the board of directors shall propose the amendment to the articles by resolution setting forth the proposed amendment and directing that it be submitted for adoption at a meeting of the members. Notice of the meeting of members, stating the purpose, shall be given to each member entitled to vote on the proposed amendment, and to each officer and director regardless of his voting rights.

"(2) If notice required by clause (1) has been given, the proposed amendment may be adopted at any meeting of the members.

\* \* \* \* \*

"Subd. 4. Where there are no members with voting rights, the amendment shall be adopted at a meeting of the board of directors upon receiving a two-thirds vote, unless the articles or bylaws require a greater vote, of the directors who are present at the meeting and entitled to vote on the proposed amendment. Notice of the meeting and of the proposed amendment shall be given."

M. S. A. 317.27 applies to all "domestic corporations" whether they elect to come under its provisions or not. The right to reject accorded to corporations in existence at the time of the passage of the act applies only to the first 25 sections of the act.[9]

The definitions applicable to and governing the act are contained in M. S. A. 317.02. The provisions pertinent here read:

---

[9]M. S. A. 317.04. "Subdivision 1. (1) Except as provided in section 317.06, and subject to clause (2), this chapter applies to all domestic corporations.

"(2) Sections 317.01 to 317.25 do not apply to a domestic corporation in existence on April 23, 1953. Every such domestic corporation may accept and come under sections 317.01 to 317.25 by complying with subdivision 3; and, unless it has signified its election to reject these sections in the manner provided in subdivision 2 within 15 months from April 23, 1953, it shall be deemed to accept and come under them."

"Subdivision 1. For the purposes of this chapter, unless the context otherwise requires, the terms defined in this section shall have the meanings ascribed to them.

\* \* \* \* \*

"Subd. 3. 'Domestic corporation' means a nonprofit corporation formed under the laws of this state, whether or not formed or coming under this chapter, for a purpose for which a corporation may be formed under this chapter.

\* \* \* \* \*

"Subd. 5. 'Nonprofit corporation' means a corporation (a) formed for a purpose not involving pecuniary gain to its shareholders or members and (b) paying no dividends or other pecuniary remuneration, directly or indirectly, to its shareholders or members as such.

"Subd. 6. 'Notice' means a written notification of a meeting (a) stating time, place and, in the case of a special meeting, purpose, (b) properly addressed according to the last available corporate records, (c) sent or delivered by a duly authorized person to each director or member entitled to vote at the meeting, \* \* \*.

\* \* \* \* \*

"Subd. 9. 'Directors' means the persons vested with the general management of the affairs of the corporation, regardless of how they are designated.

\* \* \* \* \*

"Subd. 11. 'Member' means an entity, either corporate or natural, having any membership or shareholder rights in a corporation in accordance with its articles, bylaws, or both."

Defendants-appellants contend that the trustees are the only "members with voting rights" and that, therefore, under the provisions of § 317.27, subd. 2, they were entitled to amend the articles so as to empower the trustees of the academy with the right to choose their successors. With this contention we cannot agree. As previously pointed out, M. S. A. 317.02, subd. 11, defines member as meaning an *entity*, either corporate or natural, having *any* membership or shareholder *rights* in a corporation in accordance with its articles, bylaws, or both. Certainly the right to elect the trustees,

who control and manage the affairs of the corporation, comes within the purview of this definition. It is doubtful if any membership or shareholder right is any more important than the right to vote for the election of the directors or trustees of a corporation who carry on and conduct the business of the corporation, elect or appoint its officers and agents, and in a large measure, determine the manner in which the corporation operates. Under the liberal policy to be afforded in the operational activities of nonprofit corporations, it is not necessary that the *entity* meet every recognized requirement or qualification of a member or shareholder. M. S. A. 317.02, subd. 11, as we construe it, merely requires that the *"entity,"* either corporate or natural, have some or *"any"* of the *"rights"* usually possessed and exercised by such a class. Under this construction it follows that the purported amendment of July 13, 1953, is ineffective and void because of the failure of the trustees to submit the resolution to the Minnesota Baptist Convention for its approval as required by M. S. A. 317.27, subd. 2.

It would be an anomalous situation if the trustees, who were elected by the Minnesota Baptist Convention under the special acts of 1887 and 1889, which acts we hold constitutional, could defeat the rights of the very body that elected them to their positions by now asserting, after being elected under those acts, that that body no longer has *any* membership or shareholder *rights* under the acts sufficient to entitle it to vote upon a resolution divesting it from the authority granted to it by said acts. Without a clear indication of such legislative intention or policy such procedure should not be allowed or sanctioned.

We conclude that, even if the academy is controlled and governed by the first 25 sections of the Minnesota Nonprofit Corporation Act by virtue of the failure of the corporation to reject the same within the time prescribed by the act, which need not be determined, rather than by M. S. A. 300.026 (L. 1951, c. 656), as plaintiff contends, the attempted amendment was a nullity and that the Minnesota Baptist Convention continues to have the sole and exclusive rights to elect the trustees of Pillsbury Academy.

Since this disposes of the case we need not consider or pass upon the various other contentions presented by the parties in their briefs, nor do we pass upon the constitutionality of M. S. A. 300.026. Under well-settled rules the court refrains from deciding, where it is unnecessary to do so, constitutional and other legal questions. State v. One Oldsmobile Sedan, 227 Minn. 280, 35 N. W. (2d) 525. For the same reason we refrain from passing upon paragraphs 4 and 8 of the judgment since the matters referred to therein, in view of the decision we have reached, are no longer of importance here.

Affirmed.

