FRED MIKEL v. SIGRUD AAKER, SR., AND OTHERS.
DONALD N. LINDGREN, APPELLANT.

99 N. W. (2d) 76.

November 6, 1959—No. 37,715.

*Phillips & Donohue* and *Howard I. Donohue,* for appellant.
*Atwood & Fletcher,* for respondent Aaker, Jr.
*Fred J. Hughes,* for respondent Mikel.

THOMAS GALLAGHER, JUSTICE.

Action for personal injuries sustained July 17, 1956, by plaintiff, Fred Mikel, on Sauk Lake, Stearns County, when a boat in which he was seated, was rammed by a boat owned by defendant Sigrud Aaker, Sr., and operated by defendant Sigrud Aaker, Jr., who was then 16 years of age. The Aaker boat was propelled by a 30-horsepower Johnson outboard motor owned by defendant Donald N. Lindgren, who was not present at the time of the accident. The jury returned a verdict for $8,340 against defendants Aaker, Jr., and Lindgren.

At the close of the testimony Lindgren's motion for a directed verdict based upon the ground that the evidence did not establish his negligence was denied. Subsequent to the verdict, he moved for judgment notwithstanding the verdict on the grounds that (1) the verdict was not justified by the evidence; and (2) his motion for directed verdict should have been granted as a matter of law. He appeals from the judgment entered against him after denial of this motion.

In submitting the issue of Lindgren's negligence to the jury, the court instructed it as follows:

"* * * In this case, the chattel or article of personal property bailed by the defendant Lindgren to the defendant Sigrud Aaker, Jr., was a

thirty horse power Johnson outboard motor. Such motor is not in and of itself a dangerous instrumentality.

"From the evidence in this case, it appears that the defendant Lindgren is charged by the plaintiff with negligence in entrusting this motor in the condition it was in when taken by the defendant Sigrud Aaker, without instructions as to its use. To find the defendant Donald Lindgren guilty of negligence in this case, you must find by a fair preponderance of the evidence that at the time this motor was loaned to the defendant Sigrud Aaker, the defendant Donald Lindgren knew said motor to be in a condition rendering it unsafe for use, or knew the defendant Sigrud Aaker to be unfamiliar with its use, or knew him to be an unsafe person to operate said motor in its then condition, and that it was reasonably probable that injury would result to third persons by the use thereof, by said Sigrud Aaker, Jr.; or you must find by the fair preponderance of the evidence that it was known to the defendant Lindgren that the condition of the motor was such that it was not safe to use, and that it was reasonably probable that injury to third persons would result from its use.

"In other words, you must find that defendant Lindgren knew one or more of those things; or in the exercise of reasonable care, should have known them, if they, in fact, existed."

In a memorandum made a part of the order denying Lindgren's motion for judgment notwithstanding the verdict, the court stated:

"Defendant Lindgren allowed the defendant Aaker to use his 30 H.P. motor, without supplying to him the steering wheel which had always been used to steer the boat and motor. Lindgren knew the boy intended to use the motor on a boat which had no steering wheel. The motor was capable of speeds up to thirty miles per hour. Defendant Aaker was sixteen years of age. As the motor was given to the Aaker boy, there was no provision made for steering the boat and motor except by the use of the motor's frame. This frame was normally used to attach the wire cables, which were a necessary part of the steering apparatus used with the steering wheel. With a steering wheel, the operator was seated in the front of the boat. However, here, defendant Aaker was compelled to run the boat and motor sitting in

the rear of the boat, with one hand on the throttle and one hand on the frame of the motor, straddling the seat, and facing sideways. * * *

* * * * *

"Defendant Lindgren gave no warning of any kind to defendant Aaker when he allowed him to take the motor without providing him with the customary steering wheel, and in fact, without providing him with any accepted substitute manner for steering the motor and the boat. Defendant Lindgren should have known that the motor in the condition in which the young defendant Aaker was allowed to take it, would likely be dangerous for the use for which the motor was supplied. He should have known that because of his age, defendant Aaker would not fully realize this dangerous condition. Defendant Lindgren therefore should have informed Aaker of the particular facts and circumstances which made the motor dangerous for the use on the boat on which it was to be placed."

On appeal Lindgren contends that the evidence is insufficient to support a finding of negligence on his part; and that if there was any such negligence it was not the proximate cause of the accident. In support of these contentions he points out that it is undisputed that from May 1956 until the day of the accident he had observed Aaker, Jr., operating motors and boats on the lake about twice weekly; that Aaker, Jr., had operated the same motor on Lindgren's boat on five occasions prior to the accident; that he had never been informed of or witnessed any incompetence on the part of Aaker, Jr.; that Aaker, Jr., had operated motor boats with 25- or 30-horsepower motors on this lake for 3 or 4 years and was entirely familiar with their operation; and that his father, Aaker, Sr., believed him to be competent to operate any size motor irrespective of horsepower.

With respect to the remote-control steering apparatus on Lindgren's boat, the evidence is undisputed that it was affixed to Lindgren's boat with metal bars, pulleys, cables, steering arms, and levers which could not have been readily removed. The testimony establishes that in the absence of such steering apparatus Aaker, Jr., was required to operate his boat with this motor attached, astride the rear seat facing sideways so that he might keep one hand on the throttle which kept slipping

down and the other on the steering bracket of the motor frame. He testified that he was unfamiliar with the operation of this motor and had never used it in the manner described; that in operating it he was "watching the motor; watching my hands, to make sure I was doing what I was supposed to do"; and that he was operating it at full throttle which would mean that it was traveling at a speed of approximately 30 miles per hour. At the time of the accident, the Mikel boat was proceeding southerly toward and parallel to the Aaker boat but in a course some 15 feet to the west thereof. The Aaker boat traveling northerly made a turn to the west and without reducing speed was propelled directly into and over the Mikel boat. Aaker, Jr., testified that as he proceeded into the area where the accident happened he had looked ahead but had not seen the Mikel boat at any time.

Plaintiff contends that Lindgren was negligent in allowing an immature, 16-year-old boy to use a 30-horsepower motor capable of achieving speeds up to 30 miles per hour on a boat which he knew was not equipped with remote-control steering apparatus; and in failing to warn the boy as to the danger of steering a boat with the 30-horsepower motor by means of the motor frame which would require him to occupy a rear seat facing to the side rather than to the front and which would cause the front of the boat to rise out of the water and thus obstruct the operator's forward vision.

■ It is conceded by the parties that, in so far as the 30-horsepower Johnson motor is concerned, the relationship existing between Lindgren and Aaker, Jr., at the time of the accident was that of gratuitous bailor and bailee; and that in consequence any negligence on the part of Aaker, Jr., would not be imputed to Lindgren. It would follow from this that in the situation presented the applicable principles are those expressed in Restatement, Torts, §§ 388 and 390, as follows:

§ 388. "One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;

"(b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."

§ 390. "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or from facts known to him should know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them."

■ With these principles in mind, we have examined the evidence relating to Lindgren's negligence, and, while it is lacking in force and definiteness, we have concluded that under such principles it was sufficient to create a question of fact on this issue. It reasonably supports a finding that, at the time he loaned the outboard motor to Aaker, Jr., Lindgren knew that the former intended to use it on a small boat without adequate steering equipment, and knew, or should have known, that the motor's throttle was defective. The jury might also find therefrom that Lindgren was aware that to operate the Aaker boat with this motor but without proper steering devices would require the operator to steer it through the motor frame from the rear seat so that he could not keep a careful lookout for other boats on the lake. Based on these considerations, it would appear that Lindgren's liability arises from his action in supplying a chattel to Aaker, Jr., which he knew would be dangerous to others on the lake, without reason to believe that Aaker, Jr., realized the risks involved and without warning him with respect thereto.

■ Lindgren's knowledge of the boy's age increased his obligation to give cautionary instructions as to the dangers involved in using this high-powered motor on a boat inadequately equipped to sustain its operation safely. While it is true that Aaker, Jr., had had substantial

experience in the operation of boats with outboard motors, it does not appear that any of such boats were otherwise improperly equipped. We would hesitate to say that, as a matter of law, the evidence of such experience compelled a determination that this boy was so trained and instructed that his youth could have no bearing on the results that followed, or that it would absolve Lindgren from all responsibility in loaning him an instrumentality which he knew was likely to be dangerous on this occasion. Daily v. Maxwell, 152 Mo. App. 415, 133 S. W. 351; Elliott v. Harding, 107 Ohio St. 501, 140 N. E. 338, 36 A. L. R. 1128.

Affirmed.