R. Lora EWERS, trustee for the Heirs of Patrick Keith Ewers, Respondent,

v.

THUNDERBIRD AVIATION, INC., et al., Appellants.

Stan DAVIES, Trustee, et al., Respondents,

v.

Brandt L. DAHLBERG, et al., Appellants.

Nos. 49615, 49642 and 49812.

Supreme Court of Minnesota.

Sept. 7, 1979.

Arthur, Chapman & Michaelson and Robert W. Kettering, Jr., Minneapolis, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and W. D. Flaskamp, Minnneapolis, for Thunderbird Aviation, Inc., et al.

Doherty, Rumble & Butler, Boyd H. Ratchye and Stephen I. Halper, St. Paul, for Dahlberg, et al.; Conklin, Leahy & Eisenberg, Chicago, Ill., of counsel.

Fred Allen and Bradley J. Behr, Minneapolis, for Ewers.

Hvass, Weisman & King and Charles T. Hvass, Minneapolis, for Davies, et al.

SCOTT, Justice.

These cases involve the issue of whether Minnesota law imposes vicarious liability on an owner of a Minnesota-based airplane for the negligence of a renter-pilot, when the negligent acts and impact of the airplane occurred in another state. The appeals are taken from the orders of two Hennepin County District Court judges which denied defendants' motions for summary judgment. Certain questions presented by the motions were certified by the respective trial judges as important and doubtful and thus those issues are properly before this court. See, Rule 103.03(i), Rules of Civil Appellate Procedure. We affirm.

*Ewers v. Thunderbird Aviation, John Hendrickson, Sr., and Albert Grazzini*

On October 18, 1974, defendant John R. Hendrickson, Sr., purchased an aircraft from defendant Thunderbird Aviation, Inc. (Thunderbird). On that same day, Hendrickson leased the airplane to Thunderbird. This sale and lease-back arrangement was originally suggested by defendant Albert J. Grazzini, president and sole stockholder of

Thunderbird, who is also Hendrickson's accountant. The lease agreement provided that the aircraft would be permanently based at Flying Cloud airport in Eden Prairie, Minnesota, to be used in Thunderbird's "flight service business."

On April 30, 1977, Thunderbird leased the aircraft to Fred Graf. On the same day the plane, with Graf piloting and Keith Ewers, plaintiff's husband, as passenger, departed Eden Prairie for Denver, Colorado. Upon approach to the airport in Denver, the aircraft crashed, killing both Graf and plaintiff's husband. Both Graf and passenger Ewers were Minnesota residents.

Thereafter, plaintiff, acting as trustee for the heirs of Patrick Ewers, commenced this action against defendants Thunderbird, Hendrickson, and Grazzini. Defendants moved for dismissal or summary judgment in their favor on various grounds, including that the terms of Minn.St. 360.0216 do not impose vicarious liability on defendants for the negligent acts of the pilot in the instant case. On November 2, 1978, the district court, with one exception not material here, denied defendants' motion. The trial judge subsequently certified two of the issues presented by the motion as important and doubtful.

### *Davies and Jordan v. Dahlberg and Mayer Aviation, Inc.*

For purposes of defendants' motion for summary judgment, the pertinent facts have been stipulated to by the parties. The airplane accident in question occurred on April 10, 1977. At that time defendant Brandt Dalhberg was the owner of the aircraft, and had leased the plane to defendant Mayer Aviation, Inc. (Mayer). The lease agreement authorized Mayer, in turn, to lease the aircraft to others. The airplane was maintained and hangared at Lake Elmo Airport in Lake Elmo, Minnesota.

On the date of the accident Mayer leased the aircraft to Glenn G. Bauer, a Minnesota resident. At about 4:15 p. m. that day, Bauer, as pilot, accompanied by Patrick Jordan and Julie Koponen, both Minnesota residents, departed Lake Elmo in the aircraft on a pleasure flight to Durand, Wisconsin, and return. At approximately 4:40 p. m. the plane crashed and burned in a stubble field approximately 6 miles south of Hudson, Wisconsin. The pilot and the two passengers were killed in the accident.

Prior to the crash, witnesses observed the aircraft executing a series of nose-high attitudes, accompanied by a corresponding reduction in power, followed by a pitchover to a nose-low attitude with application of power. These maneuvers, the alleged negligent acts, occurred entirely within the physical boundaries of the state of Wisconsin.

The trustees for the heirs of the passengers brought this wrongful death action against Dahlberg and Mayer. The defendants subsequently moved for summary judgment in their favor, claiming that under Minnesota law neither could be held vicariously liable for the negligence of the pilot. On January 8, 1979, the district court denied the motion, but certified the question presented as important and doubtful.

These cases present the following issues:

(1) Does Minn.St. 360.0216 impose vicarious liability on a aircraft owner when the pilot's negligent acts and impact of the aircraft occurred in another state?

(2) Are lessees/sublessors, such as defendants Thunderbird and Mayer, "owners" within the meaning of Minn.St. 360.0216?

1. In *Haskin v. Northeast Airways, Inc.*, 266 Minn. 210, 123 N.W.2d 81 (1963), this court declared that, absent legislation providing otherwise, the owner of an airplane cannot be held vicariously liable for the injuries of a passenger caused by the negligence of a pilot unless an agency-in-fact relationship is established.[1] At the time of

---

1. As the *Haskin* court points out, this principle is merely an extension of the well-accepted common-law rule that the bailor of a chattel is not responsible for damage caused by the negligence of the bailee. Of course, the rule is otherwise when the bailor is himself negligent, as for example when he entrusts the chattel to a bailee known to have reckless or incompetent propensities. *Haskins, supra*; *Mikel v. Aaker*, 256 Minn. 500, 99 N.W.2d 76 (1959). No claim

the *Haskin* decision the legislature had not modified this common-law rule and, accordingly, the *Haskin* court did not allow an injured passenger to maintain a vicarious liability claim against an aircraft owner for the negligence of a non-agent pilot. The legislative policy regarding vicarious liability of aircraft owners remained unchanged until the enactment of L.1976, c. 241. This legislation, which included provisions relating to compulsory insurance for aircraft, stated in § 2, now codified as Minn.St. 360.0216, as follows:

"360.0216. OPERATOR OF AIRCRAFT DEEMED AGENT OF OWNER. When an aircraft is operated *within the airspace above this state or upon the ground surface or waters of this state* by a person other than the owner, with the consent of the owner, expressed or implied, the operator shall in case of accident be deemed the agent of the owner of the aircraft in its operation." (Emphasis added.)

Plaintiffs claim that the above statute creates an agency relationship between the negligent pilots and defendants,[2] thus authorizing the imposition of vicarious liability. Defendants counter by arguing that § 360.0216 does not apply to out-of-state accidents and, consequently, the common law rule of non-liability as set out in *Haskin, supra,* is controlling. After careful consideration of the question, we agree with plaintiffs that under the facts of the instant cases § 360.0216 operates to impose vicarious liability on airplane owners, even though the pilots' negligent acts and resulting crashes occurred outside this state.

In resolving this issue,[3] the threshold inquiry is whether the legislation is ambiguous, thus allowing statutory construction. E. g., Minn.St. 645.16; *McCarty v. Village of Nashwauk,* 286 Minn. 240, 175 N.W.2d 144 (1970). We believe that, contrary to defendants' assertion, the wording of § 360.0216 is unclear. It provides in pertinent part that "[w]hen an aircraft is operated *within the airspace above this state* * * * the operator shall *in case of accident* be deemed the agent of the owner * * *" (emphasis added). The statute refers to the operation of the aircraft within this state, but sets no similar geographical restriction upon the phrase "in case of accident." The absence of a territorial limitation on the place in which the accident occurs raises an ambiguity in the statutory phraseology and, accordingly, construction of § 360.0216 is proper.

When construing a statute, our task is to search for, and give effect to, the legislative intent. E. g., Minn.St. 645.16; *Peterson v. Haule,* 304 Minn. 160, 230 N.W.2d 51 (1975). The obvious purpose of § 360.0216 and similar statutes is to make an aircraft owner accountable for the negligence of pilots where no such liability would otherwise exist. In other words, by imposing liability on an owner, a presumed financially responsible individual, there will be a greater certainty of recovery for those injured by the negligent operation of an airplane. To this end, the statute must be

is made in the instant cases that defendants were negligent.

2. Plaintiffs *do not* argue that an agency-in-fact relationship exists in these cases.

3. It should be noted that both of the trial judges resolved the question of whether § 360.-0216 applied to accidents occurring outside this state by relying solely upon a choice-of-laws analysis. Although there is some support for employing a form of statutory construction utilizing choice-of-law considerations for determining when a statute is to be given extrastate application, see, Leflar, American Conflicts Law, § 94 (3 ed. 1977), such an analysis is proper only when, contrary to the situation here, the relevant statute is promulgated with-

out express or implied territorial directives. See, *id.* Moreover, even when otherwise proper, this court has indicated its disapproval of a resolution of these questions on a choice-of-laws analysis. See, *Blamey v. Brown,* 270 N.W.2d 884, 890, n. 4 (Minn.1978), cert. denied, —— U.S. ——, 100 S.Ct. 1013, 62 L.Ed.2d 751 (1980). It is clear, and not disputed by defendants, that Minnesota law applies to the issues involved in the instant cases. Thus, since the threshold choice-of-law question has been resolved, a conflict-of-law analysis is now inappropriate. Rather, the determinative question before the court becomes: what is Minnesota law?

liberally construed and any doubts be resolved in favor of the injured party. See, e. g., *Shuck v. Means*, 302 Minn. 93, 226 N.W.2d 285 (1974) (decision involving Minn.St. 170.54, legislation imposing vicarious liability on owners of motor vehicles).

It is consistent with the policy manifested by § 360.0216 to allow plaintiffs in the instant cases to pursue their claims against the aircraft owners. This result will effectuate the legislative objective of providing financial relief to persons injured as a result of pilot negligence.

■ The fact that the negligent act and impact occurred outside this state does not render this statutory purpose inapplicable. Rather, it is most reasonable to construe § 360.0216 as requiring that the aircraft be operated in this state [4] at some point during its flight.[5] A contrary result, i. e., adoption of defendants' theory that the phrase "aircraft operated within * * * this state" limits an owner's vicarious liability to accidents occurring in Minnesota, would lead to unreasonable and absurd results, which, of course, we presume the legislature did not intend. E. g., Minn.St. 645.17(1); *State v. Fleming*, 302 Minn. 61, 233 N.W.2d 397 (1974). A review of the physical configuration of the state of Minnesota discloses that many plane trips, even though intrastate in place of departure and destination, will fly over states other than Minnesota. For example, a flight from the southeast portion of the state to the northeast part will most likely fly a considerable distance within airspace of Wisconsin. Or, as counsel pointed out at oral argument, a plane traveling to Moorhead, Minnesota, will land in Fargo, North Dakota, since that is the closest airport to Moorhead. Numerous other exam-

ples could be cited. On these essentially intrastate trips, did the legislature intend for vicarious liability to apply when the plane begins its journey within Minnesota's airspace, to have such liability disappear while the plane travels over another state, but again to impose liability if the plane reenters Minnesota? Similarly, on a flight along the Minnesota border, say from Winona to Red Wing, was it the legislative intent for an owner's vicarious liability to depend upon whether the wind is blowing toward Minnesota or in the direction of Wisconsin? Such results are unreasonable and will not be sanctioned by this court.

Furthermore, if the legislature actually intended to limit an owner's liability to accidents occurring within the physical boundaries of Minnesota it could have clearly done so as it did in Minn.St. 360.012, subd. 4, which also relates to the liability of aircraft owners. That statute reads, in pertinent part, as follows:

"The owner of every aircraft which is *operated over the lands or waters of this state* is absolutely liable for injury or damage to persons or property on the land or water *beneath*, caused by the ascent, descent, or flight of the aircraft, or the dropping or falling of any object therefrom * * *." (Emphasis added.)

■ We are unpersuaded by defendants' contention that the decision in *Darian v. McGrath*, 215 Minn. 389, 10 N.W.2d 403 (1943), dictates a different conclusion than that reached by the trial courts. Defendants argue that the *Darian* case construed the Minnesota motor vehicle vicarious liability statute, Minn.St. 170.54, which is similarly worded to § 360.0216, as not having

---

4. There may be other situations in which a plane's operation in relation to the state of Minnesota will come within the intended scope of § 360.0216. Resolution of this issue is unnecessary for decision of the instant actions and, thus, will be left for future cases.

5. It is important to note that § 360.0216 will not work to impose liability on an aircraft owner for an accident in another state just because the plane happens to fly over Minnesota. For this result to occur, the applicable conflict-of-laws principles must establish that Minnesota

law controls the cause of action in question. For example, if a plane flies from New York to Oregon, passing over Minnesota, and crashes in Oregon, in all likelihood Minnesota law will not be applied to resolve the merits of a claim arising out of that accident. Thus, in practical effect, in addition to requiring that the plane be operated within the airspace of Minnesota during its flight, this state must have strong contacts with the cause of action before the liability provision of § 360.0216 can be. invoked.

extra-territorial effect and thus it should be presumed that this result was intended by the legislature to be followed in construing § 360.0216. See, Minn.St. 645.17(4). The *Darian* court, however, did not construe § 170.54 as being inapplicable to out-of-state accidents. In that case we merely acknowledged that the accident in question occurred in Wisconsin and thus, under the then-controlling principles of *lex loci*, Wisconsin law governed. As a result, our motor vehicle vicarious liability statute did not apply to that action. 215 Minn. 391, 10 N.W.2d 405. Thus, our language in *Darian, supra,* was not a construction of our statute, but instead an application of the established conflict-of-laws doctrine.[6]

Based on the foregoing, we hold that an aircraft is "operated within * * * this state" within the meaning of § 360.0216 if it is actually operated in Minnesota during some point of the ill-fated flight. Since in the instant cases the aircraft in question traveled within Minnesota airspace before they eventually crashed, we affirm the decisions of the district court judges and remand for trial.

█ 2. Defendant Thunderbird claims that even if § 360.0216 applies to aircraft accidents occurring outside this state, it cannot be held liable under the statute because Thunderbird is a lessee/sublessor, and not an "owner" of the subject airplane.[7] Again, the threshold question is whether the term "owner" is ambiguous, thus allowing statutory construction. We believe the meaning of the word is unclear. Funk & Wagnalls' New Standard Dictionary of the English Language, p. 1763 (1945), defines the term "owner" as "[o]ne who owns or

has the legal title; * * * also, one who has possession." See, also, Webster's New Collegiate Dictionary, p. 820 (1973). Thus, the word "owner" may include one who has a possessory interest in a chattel, such as a lessee/sublessor. Accordingly, construction of § 360.0216 with regard to the term "owner" is proper.

█ We also believe that reference to Minn.St. 360.59, which relates to the registration of aircraft, shows that the legislature intended that the term "owner" as used in § 360.0216 include a lessee/sublessor. Section 360.59 is subject to the legislative definition of "owner" that is set out in Minn.St. 360.511 and reads as follows:

"360.511 DEFINITIONS. Subdivision 1. For the purposes of *sections 360.54 to 360.67* [provisions relating to aircraft registration and taxation] the following words, terms, and phrases shall have the meanings herein given, unless otherwise specifically defined, or unless another intention clearly appears or the context otherwise requires:

* * * * * *

"Subd. 7. 'Owner' means any person owning or renting an aircraft, or having the exclusive use thereof, under a lease or otherwise, for a period greater than 30 days." (Emphasis added.)

This statutory definition of "owner" includes a lessee/sublessor because he is renting an aircraft (assuming, of course, the rental period exceeds 30 days, as is the case here). Section 360.59, subd. 1, requires such an owner to apply for the registration of the aircraft within a certain time after he

---

**6.** Similarly, decisions from other states which have concluded that § 170.54 does not apply to accidents occurring outside Minnesota appear to rely upon the *lex loci* concept. See, *Zowin v. People's Brewing Co.,* 225 Wis. 120, 273 N.W. 466 (1937); *Armstrong v. Miller,* 189 N.W.2d 688 (N.D.1971). But, in any event, we will not presume that the legislature intended to adopt another court's construction of our statute because there is no "settled construction" in the absence of a Minnesota Supreme Court decision on the point. See, *Wenger v. Wenger,* 200 Minn. 436, 274 N.W. 517 (1937) ("settled construction" must exist before the

presumption operates). The result is different where a constitutional or statutory provision is taken from another state, in which case the construction placed upon it by the court of that state is presumed to be adopted with the provision. See, e. g., *Minnesota Baptist Convention v. Pillsbury Academy,* 246 Minn. 46, 74 N.W.2d 286 (1955).

**7.** This issue is not raised by defendant Mayer. However, since Mayer is also a lessee/sublessor of an aircraft, the issue applies to Mayer as well as to Thunderbird.

becomes an owner. Subdivision 10 of § 360.59 provides that upon application for registration the owner "shall supply any information the commissioner reasonably requires *to determine* that the aircraft during the period of its contemplated operation is covered" by certain mandatory insurance (emphasis added). Section 360.59 seems to contemplate that in some situations the lessee/sublessor may purchase and be the named insured under the required insurance policy. Therefore, if a lessee/sublessor does procure the required insurance, but is not included as an "owner" within the meaning of § 360.0216, the mandatory insurance legislation would be severely undermined because the person insuring the aircraft could not be held vicariously liable. For this reason, we hold that the legislature intended for a lessee/sublessor to be included as an "owner" within the meaning of § 360.0216.

In summary, consistent with well-established principles of statutory construction such as the requirement that § 360.0216 be liberally construed in favor of the injured party, and in particular the presumption against absurd and unreasonable results, we conclude that under the facts of the instant cases, § 360.0216 creates an agency relationship between the aircraft operators and the owners of the planes. Additionally, we hold that a lessee/sublessor of an aircraft is an "owner" within the meaning of § 360.0216.

Affirmed and remanded for trial.

OTIS, Justice (dissenting).

The single issue for determination in these two cases is whether or not Minn.St. 360.0216 applies to airplane accidents which occur beyond the borders of the State of Minnesota. The majority finds the language of the statute unclear but nevertheless extends its application beyond the borders of the state as if the issue were simply a matter of applying the choice of law doctrine.

The statute to be construed could not, in my opinion, be more unambiguous and straightforward in its language and purpose. Minn.St. 360.0216 reads as follows:

"When an aircraft is operated within the airspace above this state or upon the ground surface or waters of this state by a person other than the owner, with the consent of the owner, expressed or implied, the operator shall in case of accident be deemed the agent of the owner of the aircraft in its operation."

In essence the statute provides very simply that when an aircraft is operated over the State of Minnesota, the pilot, in case of accident, is deemed to be the agent of the owner. The word "when" quite obviously defines the circumstances under which the statute is operative. The ordinary and obvious purpose of the word "when" in the context of this statute means "if at the time" an aircraft is operated within the airspace above this state there is an accident, the operator shall be deemed the agent of the owner.

The majority takes a position that leads to a totally absurd result. For example, as construed by the majority, the statute would impose vicarious liability on an owner if an aircraft owned, licensed, and hangared in the State of Washington passed over a corner of Minnesota for as briefly as 60 seconds and proceeded to crash land in New York.

Section 360.0216 was adopted following our decisions in *Darian v. McGrath*, 215 Minn. 389, 10 N.W.2d 403 (1943) and *Haskin v. Northeast Airways, Inc.*, 266 Minn. 210, 123 N.W.2d 81 (1963). In the *Darian* case we were construing Minn.St.1941, § 170.04 of the Safety Responsibility Act which then read as follows:

"When any motor vehicle shall be operated upon any public street or highway of this state by any person other than the owner with the consent of the owner, express or implied, the operator thereof shall, in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

We held in *Darian* that our Financial Responsibility Act did not apply with respect to an accident which occurred in Wisconsin and said:

"As this cause of action arose in Wisconsin, it is conceded that we are governed by the law of that state. Wisconsin has no owner's responsibility statute, and our statute does not apply to Minnesota cars while operated in Wisconsin." 215 Minn. at 391, 10 N.W.2d at 405. Significantly the language used in § 360.-0216 and in § 170.04 is virtually identical, yet our court unequivocally held in *Darian* that the law of Wisconsin applied and not that of Minnesota. Nor has there ever been any suggestion which has come to my attention that the vicarious liability statute, as it applies to motor vehicles, has ever been enforced by a Minnesota court as to accidents beyond its borders, in the light of *Darian*. I have great difficulty in distinguishing that case where the language of the two statutes so nearly coincide.

In 1963 we decided *Haskin v. Northeast Airways, Inc.*, 266 Minn. 210, 123 N.W.2d 81 (1963) and held that airplane owners are not vicariously liable for the negligence of their operators. We said:

"The strong considerations of public policy which would justify a change in the law in this regard are for the legislature and not this court to evaluate." Id. at 216, 123 N.W.2d at 86.

The legislature has now spoken in derogation of what we stated the common law to be. Quite obviously they had in mind the *Haskin* case in adopting § 360.0216.

In my opinion, it is of considerable significance that the *Haskin* case denying vicarious liability dealt only with an intrastate flight beginning in Eveleth, Minnesota, and ending near Hibbing, Minnesota. If, as seems likely, the legislature was addressing our decision in *Haskin*, it was not called upon to deal with any airplane accidents except those which occurred within the boundaries of the state. In any event, the rules with respect to construing statutes in derogation of the common law have been stated by this court on numerous occasions. In *Beck v. Groe*, 245 Minn. 28, 44, 70 N.W.2d 886, 897 (1955):

"* * * This court has also said that, when legislation, even though in deroga-

tion of the common law, is remedial in character, a liberal construction should be adopted; but it has likewise recognized that the remedial nature of such legislation does not, however, justify a construction which gives to the statutory language an application and a meaning not intended by the legislature."

In *Car Lease Incorporated v. Kitzer*, 276 Minn. 289, 291, 149 N.W.2d 673, 675 (1967), we cited with approval the rule:

"' * * * A statute in derogation of a well-established principle of common law will not be extended by construction beyond its most obvious import.' "

Again in *In re Involuntary Dissolution of Lakeland Develop. Corp.*, 277 Minn. 432, 442, 152 N.W.2d 758, 765 (1967) we approved the rule in the following language:

"' * * * A statute is not to be construed in derogation of well-established principles of common law, * * * unless so required by express words or by necessary implication and then only to the extent clearly indicated.' "

If the legislature had not acted, and Minnesota had jurisdiction as the forum state, we would be at liberty to apply whatever we deemed to be the better rule of law in extra-territorial matters. Where, however, the legislature has explicitly defined the rights and obligations of the parties, they have exercised a prerogative exclusively theirs, and we have no authority to modify, amend, or expand their determination of policy. All of the reasons cited by the majority opinion for extending the statute to cover accidents beyond the borders of the state are valid arguments for urging the legislature to amend the statute but are not reasons for our taking on that responsibility, out of hand, to include what is not covered by the unambiguous language of the statute.

I would reverse.

SHERAN, Chief Justice (dissenting).

I concur in the views of Mr. Justice OTIS.

ROGOSHESKE, Justice (dissenting).

I join in the dissent of Mr. Justice OTIS.

PETERSON, Justice (dissenting).

I join in the dissent of Mr. Justice OTIS.