MARY R. MILNOR v. HOME SAVINGS & LOAN ASSOCIATION.[1]

May 25, 1896.

Nos. 9870—(118).

**Vendor and Purchaser—Mortgages—Priorities.**

H. and M. had severally arranged with defendant for loans on real estate which they had purchased from plaintiff, but upon which they respectively owed her part of the purchase money. To enable them to obtain the loans, plaintiff had agreed to take second mortgages on the property for her claims; but on the suggestion of the defendant an arrangement was finally agreed on by which it was to take from H. and M. mortgages large enough to include both the amounts it was lending them, and also plaintiff's claims, for which she was to take paid-up stock of the defendant, instead of second mortgages; the stock, however, not to be issued until H. and M. had severally paid on the principal of the mortgages amounts equal to the amounts of the stock which plaintiff was to take for her claims, which were $100 against H. and $400 against M.,—the money first paid in by them on the principal of the mortgages to be applied in payment of the stock. Two certificates of stock—one for $100, and another for $400—were made out in plaintiff's name, but not delivered. Neither H. nor M. ever paid anything on the principal of these mortgages. Upon H.'s default, defendant foreclosed its mortgage, and bid in the premises for less than the amount which it had loaned to him. After M.'s default, defendant accepted deeds of the mortgaged premises in full satisfaction of the mortgage debt, and released M. Plaintiff was not a party to this settlement. Thereafter she demanded the two stock certificates, which the defendant refused to deliver, claiming that the stock had not been paid for. *Held*, that the payments on the principal of the mortgages referred to voluntary payments by H. and M., which would leave the mortgage security unimpaired; that, while plaintiff was entitled to have such payments first applied in payment of the stock, yet, as to what was realized out of the mortgage securities, she occupied the position of second mortgagee, and was only entitled to have applied in payment

[1] Reported in 67 N. W. 346.

of the stock the surplus, if any, after reimbursing defendant for the money advanced to the mortgagor; that by accepting from M. conveyances of the mortgaged premises in full satisfaction of the debt, and releasing the debtor, the defendant occupied the same position as if it had received payment in full in money, and it was immaterial whether the premises were or were not in fact worth the full amount due on the mortgage. Hence plaintiff was not entitled to the $100 of stock for her claim against H., but was entitled to the $400 for her claim against M. Also, that, upon the refusal of defendant to issue to her a certificate, she was entitled to recover the value of the stock.

Appeal by defendant from an order of the district court for Hennepin county, Russell, J., denying a motion for a new trial. Modified.

*Haynes & Chase,* for appellant.

*Smith, Pulliam & Smith,* for respondent.

MITCHELL, J. The allegations of the complaint, briefly stated, are that the plaintiff was the owner of $500 of paid-up stock of the defendant association, of the value of $500, for which she paid it the sum of $500, and for which it issued to her, and in her name, stock certificates, which, for her convenience, were left with the defendant; that certain dividends have been declared on the stock, for which defendant made checks payable to her order, but which it still retains in its possession; that she has demanded of defendant that it deliver to her the stock certificates and dividend checks, but that it refused to deliver them, or any of them, to her, but has wrongfully converted the same to its own use, to her damage $700. As it is alleged that the defendant still holds the certificates in plaintiff's name, as issued, and the checks payable to her order, as executed, it is apparent that the wrongful conversion charged consists of defendant's refusal to deliver them on demand. The court found that the value of the stock was $437.50, and ordered judgment in her favor for that amount. It does not appear how the judge arrived at this amount, but it is evident that he proceeded upon the theory that the refusal to deliver the certificates and the checks amounted to a conversion of the stock, and that the judgment was intended to be for its value.

The facts are practically undisputed. One Hall and one Mathews had each negotiated and arranged with the defendant for a loan on certain real estate which they had severally purchased from the plaintiff, but upon which they still owed her a part of the purchase

money; the amount due to plaintiff from Hall being $100, and from Mathews, $400. To enable Hall and Mathews to secure the loans, plaintiff had agreed to take second mortgages for the amounts due her. But on the suggestion of defendant's secretary an agreement was finally made by which defendant was to take from Hall and Mathews mortgages large enough to include both the amounts it was lending to them, and also the amounts they respectively owed the plaintiff; and plaintiff was to take, for the amounts due her, certificates of paid-up stock of the defendant, instead of second mortgages, as at first contemplated. As part of this arrangement, however, it was agreed that the stock was not to be issued and delivered to plaintiff until the payments by Hall and Mathews on the principal of the loans should equal the face value of the certificates, but that the first moneys paid by them on the principal should be applied in payment of the stock. The evidence on part of the plaintiff is that it was also agreed that, when enough had been thus paid by Hall and Mathews on the principal of their mortgages to pay for the stock, she was to have the option to take either the stock or the money.

In pursuance of this arrangement, defendant took from Hall a note and mortgage for $1,800, and advanced him $1,700; and from Mathews notes and mortgages for $9,600, and advanced him $9,200. Defendant then executed, in form, certificates of its paid-up stock in the name of the plaintiff for $100 and $400, but retained them in its own possession, according to agreement; and, when dividends on stock were declared, also executed, in form, checks therefor, payable to plaintiff's order, but likewise retained them in its possession, except one for $22.50, which was delivered to plaintiff by mistake, as defendant claims. Neither Hall nor Mathews ever made any payments on the principal of their mortgages. Upon Hall's default, defendant foreclosed his mortgage, and bid in the premises for $1,500, which was $800 less than the amount then due on the mortgage. After Mathews' default the defendant accepted conveyances of the mortgaged premises in full satisfaction of the mortgages and debt secured thereby, surrendered the mortgagor's notes, and has since traded off the land for other property. Plaintiff was no party to this settlement with Mathews. For the sake of brevity, we have not strictly followed the record, but this statement of facts accurately presents the legal questions involved on this appeal.

The first thing is to determine the exact nature and legal effect of the agreement between plaintiff and defendant. It is clear to us that the payments on principal by the mortgagors, which were to be applied in payment of plaintiff's stock, refer to voluntary payments, and not to payments realized by defendant out of the mortgage security. According to the original plan, plaintiff was to accept second mortgages, while defendant was to have first mortgages, on the property. But manifestly it was not the intention of the parties, by the arrangement finally adopted, to invert this order, and give the plaintiff a priority. Defendant never agreed to advance on the mortgage securities more than $1,700 in the one case, and $9,200 in the other. If Hall paid $100 on the principal of his mortgage, and Mathews $400 on the principal of his, and these amounts were applied in payment of plaintiff's stock, defendant would still hold the mortgages unimpaired as security for the payment of the sums of $1,700 and $9,200 advanced to the respective mortgagors. But if, as plaintiff contends, the first moneys realized out of the mortgage security were to be applied in payment of her stock, then she would be, in effect, a first, and defendant a second, mortgagee, which clearly never was the intention of the parties. Plaintiff undoubtedly had an interest in the proceeds of the mortgages, and, to the extent of that interest, defendant held them as her trustee. Her interest was, in our opinion, just this: As to voluntary payments, which would reduce the debts without reducing the security, she was entitled to a priority, in the sense that the first money paid was to be applied in payment of her stock, but that, as to moneys realized out of the mortgage securities themselves, she occupied, in effect, the position of second mortgagee, and hence that defendant was entitled to be first repaid out of the proceeds what it had advanced to the mortgagors, and plaintiff only the surplus, if any.

Under this view of the rights of the parties, it is clear that nothing has been received by the defendant on the Hall mortgage which plaintiff was entitled to have applied in payment of the $100 stock certificate. But in the case of the Mathews mortgages the defendant, by taking conveyances of the mortgaged premises in full payment and satisfaction of the debt, and releasing the debtor, has placed itself in precisely the same position as if it had received payment in full in cash. The claim of defendant that the land was not worth the

amount of the debt is unavailing, either as a defense, or in mitigation of damages. If it had merely taken the land, at its value, in part payment, there would be merit in defendant's position; but it took it in full payment, and released the debtor. It follows that the $400 of stock, which represented plaintiff's original claim against Mathews, was fully paid, and that she was entitled to the certificate therefor, or, if her contention is true, to the money itself, at her option. But she has not sued for the money, but for the value of the stock, and must stand or fall on that position.

The question remains, do the facts establish a cause of action against defendant for the value of the stock? There is no doubt of the right of a party to obtain from the agents of a corporation a certificate showing the number of shares held by him; and the general statement of the law, in the books, is that this right may be protected and enforced by each shareholder, either through an action for specific relief, or one for damages, and that in the latter case the measure of damages is the value of the stock. Whatever may be said of the right to this latter remedy where the relation of member and shareholder has been already created and consummated, there can be no doubt about it in a case like the present, where the relation had never been created, its consummation having been prevented by the act of the defendant in refusing to issue the stock and deliver a certificate. It may be a question whether the form of the remedy, in such a case, is an action for a wrongful conversion of the stock, or one for damages for breach of the contract to deliver the stock. But this is immaterial in the present case, for the reason that no question of pleading is raised, and the parties have introduced, without objection, evidence of all the facts; and the measure of damages is the same in either case, viz. the value of the stock.

We fail to see any merit in the point that the original contract was void as being ultra vires the corporation. It had the right to make the loans it did to Hall and Mathews, and the contract between plaintiff and defendant was for an issue or sale of stock for cash. It was immaterial whether the money was to be paid directly by the plaintiff, or indirectly out of the proceeds of the Hall and Mathews mortgages.

But, as we have seen, while plaintiff was entitled to recover the value of $400 of stock, she was not entitled to recover anything on account of the other $100. The court has ordered judgment for the

value of the whole $500 of stock. The result is that this order must be, at least, modified.

Ordered, that a new trial be granted unless the plaintiff, within 10 days after the filing of a remittitur in the court below, remit one-fifth of the amount for which judgment was ordered in her favor, in which case judgment shall be entered in her favor for the balance.