## J. J. OWENS AND ANOTHER v. J. L. OWENS COMPANY AND ANOTHER.[1]

November 14, 1924.

No. 24,160.

**Appointment of receiver of corporation pending action for accounting.**

1. In an action to determine the respective interests of stockholders in the capital stock of a corporation and for an accounting between themselves, a receiver of the corporation during the pendency of the action will be appointed only when clearly necessary to safeguard property or property rights.

**When such appointment pendente lite will not be justified.**

2. Showing that there is a controversy between the stockholders concerning their respective interests in the corporation and concerning the profits which one has appropriated to himself, without showing that the business of the corporation has been mismanaged or its property wasted, dissipated or endangered, will not justify the appointment of a receiver pendente lite.

Action in the district court for Hennepin county for an accounting, for the appointment of a receiver and for other relief. From an order, Salmon, J., appointing a temporary receiver and granting a temporary writ of injunction, J. L. Owens Company and R. L. Owens appealed. Reversed.

*Francis B. Hart* and *John N. Berg*, for appellants.

*M. H. Boutelle* and *A. H. David*, for respondents.

TAYLOR, C.

This is an appeal from an order appointing a temporary receiver of the defendant J. L. Owens Company, a corporation organized under the laws of Minnesota. The company has been engaged in manufacturing farm implements and machinery in the city of Minneapolis since 1894. In all 610 shares of its capital stock of the par value of $100 each were issued. The two plaintiffs and the in-

[1]Reported in 200 N. W. 845.

dividual defendant are brothers. For convenience, the individual defendant will be designated as defendant hereafter as the controversy is between him and the plaintiffs. In 1907 plaintiff J. J. Owens owned 124 shares; plaintiff O. L. Owens 74 shares; defendant 84 shares, and a fourth brother 308 shares of the capital stock. The remaining 20 shares were held by or in trust for their mother during her lifetime. In December, 1907, defendant purchased the 308 shares held by the fourth brother and they were transferred to him. In the early part of 1908, a corporation organized under the laws of Maine, and designated in the record as the Maine corporation, was formed by the other parties for the purpose of handling and selling the products of the Minnesota Company. The Maine Company decided to purchase the stock of the Minnesota Company or as much of it as could be obtained. Defendant made an arrangement with it to purchase his stock. He made an arrangement with plaintiffs by which they transfered their stock to him. He sold the entire block of 590 shares to the Maine Company for which that company issued a certain amount of its preferred stock, a certain amount of its common stock and agreed to pay him a specified amount in money. He retained a lien on the stock sold as security for the payment of the money. Pursuant to his arrangement with the plaintiffs, he caused a specified amount of the preferred stock of the Maine Corporation to be issued to each of them. Thereafter and in 1909 their mother died and the 20 shares of stock belonging to her during her lifetime was acquired by plaintiff O. L. Owens and the defendant in equal shares. This was the only stock outstanding and not transferred to the Maine Company. The Maine Company became indebted to the Minnesota Company in a sum exceeding $60,000, for which the Minnesota Company held a lien upon the 590 shares of its capital stock held by the Maine Company. In 1916 the Minnesota Company foreclosed this lien and at the sale bid in the stock and still retains it. It is conceded by both parties that the plaintiffs and the defendant are the only stockholders of the company and the only persons interested therein.

On the death of his father in 1904 defendant became the general manager of the Minnesota Company and acting in that capacity

has managed, controlled and carried on the business of the company ever since. The by-laws place all business affairs of the company under control of the general manager. At a stockholders' meeting, held in 1912, plaintiffs and defendant were elected directors, and at a directors' meeting held immediately thereafter plaintiff J. J. Owens was elected president; plaintiff O. L. Owens vice-president; and defendant secretary and treasurer of the company. No meetings of either stockholders or directors have been held since 1912.

Defendant was general manager and plaintiffs were superintendents in the factory, each of the three receiving a very modest salary. This arrangement seems to have been satisfactory to all concerned and continued until 1923. In 1923 defendant discharged plaintiffs from the service of the company, and shortly thereafter they brought this action.

The complaint is lengthy, covering 30 printed pages of the record. Among other things, plaintiffs allege that defendant has had the exclusive control of the company for many years; that he used funds of the company in paying for the 308 shares of stock purchased from the fourth brother; that he brought about and consummated the above mentioned transactions in respect to the stock for the fraudulent purpose of acquiring and appropriating to himself all the stock and property of the company; that he claims to be the sole owner of the company and refuses to render any account of its affairs; that he will not permit plaintiffs to have access to its books or records; and that no dividends have been declared since 1908, although the company has been prosperous and has earned profits beyond the necessities of the business. They ask that the transactions divesting them of title to their stock be set aside as fraudulent and void; that they be given their pro rata share of any stock acquired by defendant with the funds of the company; that the respective interests of the three in the stock of the company be determined; that defendant be required to make a full and complete accounting of all funds received; that plaintiffs be given access to all books and records of the company; that defendant be forbidden from interfering with any of the books or

records and from diverting any of the funds of the company; and that a receiver be appointed to take charge of the company and liquidate its affairs and distribute the proceeds to the parties according to their respective interests.

The answer denies all the charges of wrongdoing, and asserts that plaintiffs have, and always have had, free and unrestricted access to all the books and records of the company, and have had full knowledge of all its affairs at all times.

It is universally recognized that the appointment of a receiver of a corporation in a controversy between its stockholders is a drastic remedy to be resorted to only when clearly necessary to safeguard property or property rights.

"A receiver will be appointed only under circumstances requiring summary relief, or where the court is satisfied that there is imminent danger of loss, and where there is no remedy at law."

Northland Pine Co. v. Melin Bros. Inc. 136 Minn. 236, 161 N. W. 407, 1 A. L. R. 1463. To same effect see Bacon v. Engstrom, 129 Minn. 229, 152 N. W. 264, 537; Thwing v. McDonald, 134 Minn. 148, 156 N. W. 780, 158 N. W. 820, 159, 564, Ann. Cas. 1918E, 420; Green v. National Adv. Co. 137 Minn. 65, 162 N. W. 1056, L. R. A. 1917E, 784; Rothwell v. Robinson, 44 Minn. 538, 47 N. W. 255; Katz v. DeWolf, 151 Wis. 337, 138 N. W. 1013, Ann. Cas. 1914B, 237; Inscho v. Mid-Continent Development Co. 94 Kan. 370, 146 Pac. 1014, Ann. Cas. 1917B, 546; Wallace v. Pierce-Wallace Pub. Co. 101 Iowa 313, 70 N. W. 216, 38 L. R. A. 122, 63 Am. St. 389; 34 Cyc. 79.

That the company has been successful and that the value of its assets over and above liabilities largely exceeds the amount of its paid-in capital is not questioned. There is no complaint of the manner in which its business has been managed; no claim that its business transactions have been unwisely or improperly conducted; and no charge that its property has been mismanaged, wasted or dissipated in any way. The controversy is concerning the internal affairs of the company, not its business affairs; is concerning the interest or share in the company and its profits, and the voice in its management, to which the three parties are respectively entitled.

The company is a going concern which manufactures and sells farm machinery. Confidence on the part of customers that they are dealing with a responsible company to which they can look to remedy defects and from which they can obtain repairs as needed has much to do with the success of such a business. If the company is placed in the hands of a receiver, customers will naturally conclude that it is being wound up, and the effect upon its business will be injurious if not disastrous. The action is about to be tried on the merits, and, when all the facts are before the court, it will be in position to determine the rights of the respective parties and can take such action as may be necessary to protect and enforce such rights.

In the record now before us we find nothing which, under the rules governing such matters, will justify the appointment of a receiver pendente lite. We wish it understood that what has been said is not to be taken as indicating any opinion concerning the merits of the controversy. The order appointing a temporary receiver is reversed.