## FIRST NATIONAL BANK & TRUST COMPANY OF MINNEAPOLIS v. ELIZABETH M. MALERICH. HENNEPIN SAVINGS & LOAN ASSOCIATION AND ANOTHER, GARNISHEES.[1]

March 8, 1935.

No. 30,222.

Shearer, Byard & Trogner, for appellant.

Junell, Driscoll, Fletcher, Dorsey & Barker and Waldo F. Marquart, for respondent.

[1]Reported in 259 N. W. 546.

HILTON, JUSTICE.

The First National Bank & Trust Company of Minneapolis brought suit against Elizabeth M. Malerich. Ancillary to that action a garnishment proceeding was instituted in which the Hennepin Savings & Loan Association (hereinafter called association) was named as garnishee. On June 26, 1933, it made a disclosure in substance as hereinafter indicated. Another garnishee was discharged. Defendant Malerich was a nonresident, and jurisdiction was obtained by publication. Plaintiff filed the necessary bond and obtained judgment by default for $234.27.

The association was a Minnesota corporation. It had an authorized capital of $5,000,000, divided into 50,000 shares of $100 each. Its funds were accumulated by the sale of its capital stock to its members. Payments of such stock were made either in a lump sum or instalments. Its by-laws provided that any person may become a member by subscribing for, or in any way becoming the owner of, one or more shares of stock. Each member is deemed to be the owner of one share of stock for each $100 of credit standing on the books of the association (whether from cash payments or dividends accrued), and is entitled to have issued to him one certificate for each such $100. If the member neglects to demand a certificate, the association's board of directors may nevertheless issue such certificate. Defendant at the time of the service of the garnishee summons had paid in and had standing to her credit on the books of the association the sum of $440.33. Entries aggregating that sum appeared in a "pass book" retained by her. There were no liens or offsets against that credit, and no certificates had ever been issued or delivered to her.

Pursuant to a resolution withdrawals or payments on account of capital stock issued and outstanding were deferred for a period of three months from and after September 1, 1931. L. 1933, c. 100, Mason Minn. St. 1934 Supp. § 7755, made certain provisions relative to withdrawals on account of stock in such associations which provisions the association by resolution adopted. Such limitations as to the time and manner of withdrawals are not here of importance. The purchaser at execution sale would succeed to whatever rights defendant had.

On the basis of the foregoing facts the trial court entered an order directing that the garnishee execute four certificates for four shares of its paid-up capital stock, each in the face amount of $100 and each in the name of defendant; that a writ of execution issue directing the sheriff to take the said certificates into his custody and possession; that the garnishee deliver the said certificates to the sheriff; and that the certificates, or as many thereof as may be necessary, be sold as upon execution to satisfy the judgment obtained by the plaintiff in the main action. From the order so made the garnishee appealed.

Service of a summons upon a garnishee attaches and binds "all the property and money in his hands or under his control belonging to the defendant, and all indebtedness owing by him to the defendant at the date of such service, to respond to final judgment in the action." 2 Mason Minn. St. 1927, § 9359. If the certificates for the four shares of stock to which defendant was entitled had been issued, and if such certificates were in the hands or under the control of the garnishee at the time of service of the summons, they would have been subject to garnishment. Puget Sound Nat. Bank v. Mather,. 60 Minn. 362, 62 N. W. 396; Yazoo & M. V. R. Co. v. City of Clarksdale, 257 U. S. 10, 22, 42 S. Ct. 27, 66 L. ed. 104. The contention that because the certificates '(the evidence of the ownership of the shares of stock) had not been executed there was no property in the hands or under the control of the garnishee is a most technical one and cannot be sustained. All that was required in order for the certificates to be issued was purely a ministerial act of the association's president and secretary—the mere affixing of their signatures to the certificates and the impression of the corporate seal thereon; the time consumed in so doing could not exceed a few minutes. It was their bounden duty so to do. The shares had been paid for, and the defendant had an absolute right to the certificates thereof. Her rights as against the association were the same as if the certificates had been issued and were retained by it. Defendant had at least two remedies open to her. As was said by Mr. Justice Mitchell in Milnor v. Home S. & L. Assn. 64 Minn. 500, 504, 67 N. W. 346, 347:

"There is no doubt of the right of a party to obtain from the agents of a corporation a certificate showing the number of shares held by him; and the general statement of the law, in the books, is that this right may be protected and enforced by each shareholder, either through an action for specific relief, or one for damages, and that in the latter case the measure of damages is the value of the stock."

We are not here concerned with the garnishability of shares of stock of a corporation the certificates of which have been issued and delivered, and we do not decide whether or not in such situation the shares of stock could be reached by garnishment. On the facts before us we sustain the order appealed from.

Affirmed.