IN RE INVOLUNTARY DISSOLUTION OF HEDBERG-
FREIDHEIM & COMPANY.
CHARLES FREIDHEIM AND ANOTHER v. HEDBERG-
FREIDHEIM & COMPANY AND OTHERS.[1]

April 13, 1951.

No. 35,346.

*Donald J. Kelly,* for appellants.
*R. H. Fryberger,* for respondents.

CHRISTIANSON, JUSTICE.

This is a proceeding under M. S. A. 301.49 (Minnesota business
corporation act, L. 1933, c. 300, § 48), for involuntary dissolution
of Hedberg-Freidheim & Company, a Minnesota corporation, en-

[1]Reported in 47 N. W. (2d) 424.

gaged in the production and sale of sand, gravel, and concrete blocks. Appellants, Hedberg-Freidheim & Company, Fred Hedberg, and Dorothy Hedberg, demurred to the dissolution petition. The demurrers were overruled, and the district court certified the questions presented as important and doubtful. They appeal from the order overruling their demurrers.

The corporation in question was organized April 1, 1922, for a period of 30 years, so its charter will expire April 1, 1952. It has 282 shares of stock issued and outstanding, of which petitioners, Charles Freidheim and Grace E. Freidheim, his wife, own 140 shares and one share respectively, while appellants Fred Hedberg and Dorothy Hedberg, his wife, also own 140 shares and one share respectively. These holdings represent the entire stock of the corporation. Fred Hedberg is the president of the corporation, Charles Freidheim is secretary-treasurer, Grace E. Freidheim is first vice president, and Dorothy Hedberg is vice president. The four of them have constituted the entire membership of the board of directors since about 1929. The corporation has two subsidiary corporations. It owns all the stock of the Hedberg-Freidheim Contracting Company and the McGowan Contracting Company, both Minnesota corporations. Dissolution of the subsidiary corporations is not sought in the present proceedings.

The allegations of the petition[2] are detailed and involved. They show that since the year 1935 there has been continuous dissension, which has become more pronounced in recent years, between the two families with respect to the operation of the business of the corporation. It is alleged generally that Fred and Dorothy Hedberg, as one faction, and petitioners, as the other faction, "are so

[2]Since this is an appeal from an order overruling demurrers to the petition, we must take the facts alleged in the petition as true and will regard the demurrers as admitting all necessary inferences or conclusions of law which follow from facts well pleaded, as well as all inferences of fact which may reasonably be drawn from the facts expressly pleaded. Local 1140 v. United Electrical, R. & M. Workers, 232 Minn. 217, 45 N. W. (2d) 408. Moreover, the petition must be examined as a whole. 1 Pirsig's Dunnell, Minn. Pl. (3 ed.) § 96.

deadlocked that the corporation's business cannot be longer conducted with advantage to its shareholders," and that those in control of the corporation have been guilty of abuse of authority and persistent unfairness toward minority shareholders.[3] These are two of the statutory grounds for involuntary dissolution of a business corporation enumerated in § 301.49.[4] In addition, mismanagement of the corporation is claimed.

Fred Hedberg has been in charge of production for the corporation, and Charles Freidheim has had charge of collections, credits, financial details, the supervision and construction of new buildings, purchasing of equipment, and arranging for the possible expansion and further development of the business. However, for the last two or three years Hedberg has practically taken over the operation of the corporation's business without consultation with the other directors.[5]

---

[3]The same situation is alleged generally to exist with respect to the subsidiary corporations, Hedberg-Freidheim Contracting Company, which owns trucks and is engaged in hauling sand and gravel for the parent company, and McGowan Contracting Company, which operates a gravel and concrete block manufacturing plant. Hedberg and Freidheim were elected and theoretically are equally in control and in charge of the two subsidiary corporations.

[4]Section 301.49 insofar as material here provides as follows:

"A corporation may be dissolved by involuntary proceedings in the *discretion* of the court when it is made to appear:

\* \* \* \* \*

"(3) That the directors or those in control of the corporation have been guilty of fraud or mismanagement, or of abuse of authority, or of persistent unfairness toward minority shareholders; or

"(4) That there is internal dissension and that two or more factions of the shareholders in the corporation are so deadlocked that its business cannot longer be conducted with *advantage* to its shareholders;" (Italics supplied.)

[5]Paragraph XXVII of the petition alleges:

"That said Fred Hedberg has taken over and assumed all of the power and duties in operating said business of said corporation, and has claimed the right so to do by reason of his position as president thereof, and has, or has attempted, to exclude petitioner Charles Freidheim from taking any part therein."

Since 1947, Hedberg has refused to speak to or converse with Freidheim in connection with the business and affairs of the corporation except at formal meetings of its board of directors and shareholders. In order for Freidheim to communicate with Hedberg, Freidheim has been compelled to send messages to Hedberg through Hedberg's son. Recently, Hedberg caused a partition to be built in the office of the corporation between their respective desks so as to remove himself from personal contact with Freidheim. He has openly expressed himself to the corporation's employes of his bitterness toward Freidheim to such an extent that the employes have become fearful and dissatisfied. Suggestions made by Freidheim with respect to operation of the business, business policies, bonuses to employes, and various public relations are always vetoed by Hedberg without regard to the consideration of the merits thereof. Differences exist between them on a number of basic questions of corporate policy and management. They need not be enumerated here. It is sufficient to state that because of the lack of coöperation, exchange of ideas, and refusal on Hedberg's part to permit proposals made by Freidheim to be put into effect, even those relating to the departments of the business over which Freidheim is supposed to have charge, a stalemate has been reached, and it is no longer possible for them to conduct the business and affairs of the corporation in a profitable manner.

It is alleged that due primarily to the increased demand for gravel, sand, and concrete blocks brought about by the intensive building program heretofore existing in this area, the corporation's business, notwithstanding the dissension and deadlock between the two factions, has prospered financially in the past. However, because of the competitive nature of the business in which the corporation and its subsidiaries are engaged and the fact that new building construction has been curtailed, a less favorable market now prevails. It is alleged that because of such dissension and deadlock in the affairs of the corporation it cannot be operated successfully and efficiently, and that any attempts of Hedberg and Freidheim

538

further to carry on the business of the corporation will result in depletion of its assets and irreparable damages to its shareholders.

The petition recites numerous additional allegations of fact which need not be detailed here. However, it discloses that Fred and Dorothy Hedberg themselves filed a petition for involuntary dissolution of the corporation on April 8, 1949. Therein they alleged the same ultimate facts as grounds for dissolution of the corporation as those appearing in the present petition, except that there it was contended that Charles Freidheim was the party at fault. The Hedbergs voluntarily dismissed their petition on August 19, 1949. Thereafter, the Freidheims instituted the present proceedings by filing their petition on December 13, 1949. They have expressly made the Hedberg petition a part of their petition by reference. It clearly appears from the respective petitions that the bitterness between the two factions has reached a point where, regardless of the fact that a suggestion by one of them may be for the benefit of the corporation, the other will vote against it wholly in disregard of the interests of the corporation.

In our opinion, the only point appellants raise requiring special consideration is their contention that § 301.49 does not permit the involuntary dissolution of a solvent corporation. In effect, they contend that where a corporation is solvent and a going concern the courts of this state have no jurisdiction to order its dissolution in involuntary proceedings. They base their contention upon the words, "its business cannot longer be conducted with advantage to its shareholders," appearing in § 301.49 (4). This subsection of the statute reads:

"That there is internal dissension and that two or more factions of the shareholders in the corporation are so deadlocked that *its business cannot longer be conducted with advantage to its shareholders*." (Italics supplied.)

It is apparent from a reading of § 301.49 in its entirety that the language relied upon by appellants applies only to subsection (4) thereof. Furthermore, it clearly appears from subsection (4) that the power of the district court to dissolve a domestic corporation on

the ground of internal dissension and deadlock is not predicated upon its insolvency. The statute does require, if dissolution be based on this ground alone, that there be a finding that the dissension and deadlock is such that the business of the corporation "cannot longer be conducted with advantage to its shareholders." Petitioners have alleged such to be the fact in the instant case. In addition, their petition contains allegations of mismanagement, resulting damage to the corporate business, abuse of authority, and persistent unfairness toward minority shareholders. In and of themselves, these allegations state separate and independent grounds for involuntary dissolution under subsection (3) of § 301.49.

Prior to the enactment of the Minnesota business corporation act in 1933, this court held that courts of equity in this state possessed the power and jurisdiction, independent of statutory authority, to wind up the affairs of a domestic corporation and adjudge its dissolution where there was prejudicial mismanagement by those in control, even though the corporation was solvent. Green v. National A. & A. Co. 137 Minn. 65, 162 N. W. 1056, L. R. A. 1917E, 784, Owens v. J. L. Owens Co. 161 Minn. 6, 200 N. W. 845; see, Thwing v. McDonald, 134 Minn. 148, 156 N. W. 780, 158 N. W. 820, 159 N. W. 564.

Courts are reluctant to substitute their business judgment for that of the corporation's directors or the majority of its stockholders. However, where differences between two equally divided factions in a corporation are irreconcilable and the dissensions between them incurable[6] so as to make the continuance of the corporation unprofitable to its shareholders, the court is expressly given the power and discretion by § 301.49 to dissolve the corporation on that ground alone.[7]

---

[6]Paragraph XXVIII of the petition alleges in part:

"* * * that the parties have reached a point where amicable settlement of their differences out of Court is impossible and said deadlock cannot be removed or overcome by their voluntary acts."

[7]For recent Annotation on "Dissolution of corporation on ground of intracorporate deadlock or dissension," see 13 A. L. R. (2d) 1260, 1266.

It follows that the district court's order overruling the demurrers to the petition should be affirmed.

Affirmed.