152 N.W.2d 758 (1967)
In re Involuntary Dissolution of LAKELAND DEVELOPMENT CORPORATION.
James E. ANDERSON, Petitioner, Respondent,
v.
David W. ANDERSON, Objector, Appellant.
No. 40417.
Supreme Court of Minnesota.
August 18, 1967.
*760 Harry H. Peterson, Minneapolis, for appellant.
Byron W. McCullagh, William B. Korstad, Minneapolis, for respondent.

OPINION
PETERSON, Justice.
This is an appeal from an order of the District Court of Hennepin County appointing a liquidating receiver and directing the liquidation of Lakeland Development Corporation responsive to a petition for involuntary dissolution by one of its two stockholders of record, pursuant to Minn.St. 301.49.[1] The ultimate question for decision is whether the trial court abused its discretion in granting the petition for dissolution under the unusual circumstances of this case.
Lakeland Development Corporation (hereafter referred to as "Lakeland" or the "corporation") is a Minnesota business corporation, with registered office in Hennepin County, organized for the purpose of buying, developing and selling land in Anoka County. James E. Anderson (hereafter referred to as "petitioner" or "James") and David W. Anderson (hereafter referred to as "objector" or "David"), who are brothers, are the two shareholders of record. The claims of two younger brothers to an interest in the corporation are stated later in this opinion.
The principal asset of Lakeland consists of approximately 18 acres of commercially zoned, undeveloped land located in Spring Lake Park, Anoka County.[2] Petitioner and objector are in serious dispute concerning the disposition of the land. Petitioner wishes to sell the land now and objector wishes to hold the land for future sale. The highest and best use for the land, at least in view of objector, is for a shopping center or like commercial venture. A basic claim of the petition, however, is that because dissension and deadlock between petitioner and objector prevents a sale of the property now, "the equity of the shareholders in the corporate assets is being diminished and wasted by the accumulation of *761 real estate taxes and other expenses of the Corporation."[3]
The present and potential value of the corporation's land, however, is in serious dispute. Objector contends that its value is from $125,000 to $160,000, apparently based upon the appraisal of a well-known professional appraiser as to its present and potential value, with particular note of its location in a vastly expanding suburban community in the metropolitan area. Petitioner contends that its value is considerably less, based upon the fact that, in 1961, an interested purchaser had refused to buy the land for $125,000 but offered to purchase approximately one-half the tract for $45,000. Objector argues, upon the premise that the rate of annual appreciation of the corporate property is substantially in excess of the annual taxes and carrying charges, that, notwithstanding its inactivity due to the present deadlock, Lakeland has no business to transact other than to collect annual billboard rental and to hold this valuable real estate tract until a future time when its appreciated value may more fully be realized for the greater benefit of all the shareholders. Although important issues of fact are raised by these contentions, the trial court did not undertake a determination of their merit. For reasons hereinafter discussed, we think that it should have done so.
The other basic dispute of fact raised by the claim of objector relates to the existence and adverse effect of the deadlock itself. There is no dispute that dissension exists and that it has resulted in a present deadlock, for no corporate meetings have been held since October 1963 and a present sale of Lakeland's real estate is thwarted. Lakeland has three directors: Petitioner, objector and a nonshareholder attorney who "advised said shareholders that he does not wish to vote upon matters [in] which the shareholders, as the remaining directors, did not agree." There is a question, however, as to the probable permanence of the deadlock because of the claims to an interest in the corporation made by the disputants' two younger brothers, Walter and Theodore. They assert that they are each entitled to 5 shares of the stock now recorded in the names of petitioner and objector. These claims, at least now, are supported by objectorand implicit in the claims is the suggestion that Walter and Theodore would vote their 10 shares with objector to break the deadlock if given the opportunity to establish the claims prior to liquidation of the corporation.
The basis of the younger brothers' claims is readily stated. Eugene Anderson (hereafter referred to as "decedent") organized Lakeland in 1953 and died intestate in 1960. He left four sons surviving him: James, David, Walter and Theodore (the latter two being then minors and in the custody of their mother pursuant to a 1957 divorce decree). As appears from the files of the Anoka County Probate Court, to which our attention was invited on oral argument, decedent left only a small estate. The principal asset of the estate was decedent's 20 shares of Lakeland stock, appraised in the estate at $7,000. Claims against the estate exceeded the cash assets. Petitioner, pursuant to a license to sell granted by the probate court upon his appointment as administrator of decedent's estate, sold decedent's 20 shares of Lakeland stock to objector, but with a contemporaneous agreement between petitioner and objector that objector would thereafter sell and assign 10 shares to petitioner. The purchase money for petitioner and objector to acquire the stock was raised by a loan from Lakeland, secured by personal notes and *762 pledges of capital stock.[4] But for this sale and purchase, the stock would have been distributed equally among the four sons. Walter and Theodore assert, in an affidavit of record, that there was an understanding that the 20 shares of stock were to have been divided equally among the 4 brothers, notwithstanding the sale to petitioner and objector, and that the agreement between their older brothers gave no formal expression to the understanding only because of a need and intent to exclude from Lakeland "any influence which could have been exerted by [their] mother who was at the time of the purchase still [their] legal guardian." They allege that petitioner and objector have subsequently on several occasions acknowledged their obligation to so apportion the stock. We do not on appeal determine the fact of whether such an agreement existed,[5] nor do we hold that these are claims determinable in these proceedings.[6] We do hold, nevertheless, that in the context of this case at least the probability or improbability of merit in these claims is properly before the court for determination as an essential threshold finding on the issue of continuing deadlock.
A third fact issue, which we consider only incidentally in our disposition of this appeal, was raised by the objections to the petition. Objector urges that corporate funds have been unlawfully diverted from Lakeland by petitioner and Lakeland's attorney-director.[7] This is apparently asserted *763 for the dual effect of causing denial of the petition on the equitable grounds of unclean hands[8] and supporting objector's claim that Lakeland would have available cash, if the disputed funds were recovered with which to pay all its obligations.[9] These claims are vigorously denied by petitioner. The trial court made no determination concerning this issue.
The trial court's order, the subject of this appeal, contains no specific affirmative or negative findings upon the disputed issues of fact. It contains only the ultimate findings by which it concluded in statutory language "among other things, that the objects of the Corporation have been abandoned or their accomplishment is impracticable and that internal dissension exists among the shareholders and the directors to such an extent that the Corporation is so deadlocked that its business cannot longer be conducted with advantage to its shareholders and that it is to the best interests of the shareholders that said Corporation be dissolved."[10]
*764 We hold that the trial court, notwithstanding its undoubted discretion in dissolution proceedings, on this record erred in ordering the dissolution of Lakeland Development Corporation and in appointing a liquidating receiver thereof. We remand the matter for further proceedings consistent with this opinion.
The existence of a present deadlock alone is not in our view a sufficient ground for ordering dissolution without a further determination that the deadlock is permanently irreconcilable, a determination not yet made by the trial court. In the unusual circumstances of this case it seems incumbent upon the court to make more specific determinations concerning the potential deadlock-breaking rights of the younger brothers. It may, on the one hand, determine that those claims of right are so lacking in probable substance as not to warrant interference with the proceeding initiated by petitioner. It may, on the other hand, determine that the claims are not thus lacking in substance and, in its discretion, either postpone a decision upon this petition until those alleged rights can be timely asserted or conclude that delay would nevertheless be so prejudicial to the petitioner or the corporation as not to warrant postponement pending adjudication of such rights.
Even irreconcilable deadlock is not sufficient, moreover, without a supported finding that the shareholders are "so deadlocked" that, in terms of the practical economics of this corporation, a deferred sale of its properties is manifestly impracticable and its business accordingly cannot longer be conducted with advantage to its shareholders.[11]
A brief restatement of the nature of proceedings for involuntary dissolution of a corporation will give the legal substance of our view on these points. First, dissolution proceedings, although now statutory, are fundamentally equitable in nature. Courts of equity long have had inherent power even without statutory authority to entertain proceedings to wind up the affairs of a corporation and to appoint a receiver for that purpose.[12] Although the *765 effect of the statute is to prescribe procedures and particularize the grounds for dissolution, the inherent power of equity is not thereby impaired and, instead, such power gives meaning to the provisions of the statute.[13] The relationship of the statute and inherent equity power in dissolution proceedings is analogous to the same relationship in partition proceedings, as to which this court spoke through Mr. Justice Matson in a carefully reasoned opinion in Swogger v. Taylor, 243 Minn. 458, 464, 68 N.W.2d 376, 382:
"* * * Although, since the adoption of the code in this state, a statutory partition action is governed by the rules of pleading, practice, and evidence applicable to an ordinary civil action, determinations under the statutory procedure are, nevertheless, governed by equitable principles. * * *
"Equity, which is not a distinct and self-sufficient juristic system designed to overrule or correct other law, functions as a supplement to the rest of the law where its remedies are inadequate to do complete justice. * * * A statute is not to be construed in derogation of well-established principles of common law, or of equity, unless so required by express words or by necessary implication and then only to the extent clearly indicated. State Bank of Milan v. Sylte, 162 Minn. 72, 75, 202 N.W. 70, 71; 50 Am.Jur., Statutes, § 401. Any other holding would defeat equity's fundamental purpose. Statutory enactments, even though they provide new procedures to enforce pre-existing rights at law and in equity, are to be read in harmony with the existing body of law, inclusive of existing equitable principles, unless an intention to change or repeal it is apparent."[14]
Second, as an equitable principle the court should grant the drastic remedy of dissolution with great caution and not in doubtful cases.[15] It is fundamental that a receiver should be interposed to conserve and not to destroy. This principle was stated in Glaser v. Achtel-Stetter's Restaurant, 106 N.J.Eq. 150, 153, 149 A. 44, 45:
"* * * The spirit of the statute relating to the appointment of a receiver aims to accomplish, by such appointment, the preservation of the interest of the stockholders and creditors; therefore, when it appeared, as it did in this case, that the appointment of a receiver would only add an additional burden upon the burden which already weighed heavily upon the estate, and tended to eat up all the available assets by receivership expenses, no receiver should have been appointed, and the parties should have been left to pursue their remedy at law. The appointment of a receiver is not a matter of absolute legal right, and therefore. sound discretion should be exercised by the court before any such appointment is made. It is highly inequitable to appoint a receiver where it appears that the ultimate result will be a sacrifice of the assets of the corporation wholly to the profits *766 of counsel and receiver and to costs and expenses of such receivership."
The same thought was echoed in Zwick v. Security State Bank, 186 Minn. 308, 311, 243 N.W. 140, 141, where this court noted:
"* * * Receiverships are notoriously expensive and rightly considered a last resort. Frequently they have been hurtful rather than helpful to all concerned, save only the receivers and their counsel."[16]
16 Fletcher, Cyclopedia of Corporations (Perm. ed.) § 7728, states as a corollary "that because the appointment will do no harm will not of itself warrant the appointment."
Third, it is not enough simply to establish the present existence of deadlock, for it must be demonstrated that the deadlock is incurable and that adverse results serious and substantial in nature necessarily flow from that deadlock. The statute here involved by its terms requires that the factions of shareholders be "so deadlocked that its business cannot longer be conducted with advantage." (Italics supplied.) That this was the equitable rule, apart from statute, was illustrated in McGuire v. Kaysen-McGuire Co., 184 Minn. 553, 557, 239 N.W. 616, 618, where this court, quoting from 8 Fletcher, Cyclopedia of Corporations, § 5245, stated:
"A receiver is properly appointed where there are such dissensions * * * that it is impossible to carry on the business with advantage to the parties interested, even though the corporation is solvent * * *. * * * [I]t has been held, however, that the court `should not interfere by a receiver for the purposes of preservation even, unless there is a present danger to the interests of the stockholders, consisting of a serious suspension of or interference with the conduct of the business, and a threatened depreciation of the value of the assets consequent thereon, which may be met and remedied by a receiver. * * *'"[17]
(Italics supplied.)
In McGuire, we affirmed the district court's order sustaining a demurrer to the complaint seeking dissolution of a corporation organized as a holding company having no operating functions, there being no claim that the business of the holding company was endangered. In re Hedberg-Freidheim & Co., 233 Minn. 534, 47 N.W.2d 424, arose, in contrast, on a demurrer to the complaint seeking dissolution of an operating company. We affirmed the district court's order overruling the demurrer and granting dissolution. The corporation there was engaged in a highly competitive market and the deadlock, the permanence of which was not disputed, made it impossible to conduct the affairs of the corporation in a profitable manner, particularly in view of the less favorable market then existing as a result of curtailment in new building construction. This court there stated (233 Minn. 539, 47 N.W.2d 428):
"* * * [W]here differences between two equally divided factions in a corporation are irreconcilable and the dissensions between them incurable so as to make the continuance of the corporation unprofitable to its shareholders, the court is expressly given the power and discretion by § 301.49 to dissolve the corporation on that ground alone." (Italics supplied.)[18]
*767 The existence of deadlock in this case is not necessarily irreconcilable or incurable if there is any substance to the claims of right by the two younger brothers. The objector does not contend that the brothers can have their claims adjudicated in this proceeding. What the objector does contend is that the court should have deferred a determination on the petition for dissolution until their rights could be adjudicated. Although we do not declare a rule for every case, we think that the court, in the particular posture of this case, should, as a matter of equity, consider these claims. We can understand that there may be cases in which the danger to the corporation is so immediate that the court would act without delay, leaving the claimants to their separate legal remedy,[19] or cases in which the claim is palpably so lacking in substance as not to warrant delay. If it were true that the property is subject to substantial annual appreciation and that the younger brothers would have probable claims of right, a share in the proceeds of a present liquidation, at a lesser price than they might otherwise receive upon a deferred sale, would not constitute for them an adequate remedy at law, and an improvident ordering of liquidation now could have the same adverse effect upon objector. The court made no determination that such a situation is present here. The trial court only concluded, erroneously we think, that the question of their rights was not before it and was, therefore, in effect irrelevant.
A dissolution on grounds of deadlock cannot be ordered unless it is established that, as a result of deadlock, the business cannot be conducted with advantage. "Advantage" affirmatively connotes elements of opportunity, benefit, or profit, and negatively suggests absence of sacrifice, harm, or loss. We can understand that corporation deadlock will probably in most cases result in disadvantage to the corporate objective of the shareholders, as in In re Hedberg-Freidheim & Co. supra. If the claim of objector were true, however, the inaction of this solvent corporation conceivably could result in profit rather than loss, or, in the framework of the petition itself, in appreciation rather than in diminution of corporate assets.
It is not the role of the trial court to substitute its business judgment for that of directors and shareholders, which in practical effect would be the inescapable result of its order either granting or denying the petition for dissolution in this case. We neither assume nor decide, on this record, that the objector's claims are established. We hold only that a proper exercise of the trial court's discretion requires that it make more comprehensive findings of fact conformable to this opinion as a prerequisite to any order for dissolution that it may hereafter issue.
Reversed and remanded[20] for further proceedings consistent with this opinion.
NOTES
[1] Minn.St. 301.49 provides: "A corporation may be dissolved by involuntary proceedings in the discretion of the court when it is made to appear:

"(1) That the corporate assets are insufficient to pay when due all just demands for which the corporation is liable; or
"(2) That the objects of the corporation have wholly failed or are entirely abandoned or their accomplishment is impracticable; or
"(3) That the directors or those in control of the corporation have been guilty of fraud or mismanagement, or of abuse of authority, or of persistent unfairness toward minority shareholders; or
"(4) That there is internal dissension and that two or more factions of the shareholders in the corporation are so deadlocked that its business cannot longer be conducted with advantage to its shareholders; or
"(5) That the period for which the corporation was formed has terminated without extension." (Italics supplied to indicate the premise of the petition in this case.)
[2] Other assets of Lakeland include accounts receivable, mainly from loans and advances to the petitioner and objector. Using petitioner's statement illustratively (because these figures are somewhat in dispute), petitioner owes the corporation $20,047.91 and objector owes $3,788.
[3] The real estate taxes for the years 1964, 1965 and 1966, aggregating approximately $2,300, have not been paid. The "other expenses" appear to be for attorneys' fees in an unspecified amount, apparently incurred in easement condemnation proceedings, tax litigation, and certain general legal services suggested but not specified in the record.
[4] The exact price paid for the stock is not clear in this record, but appears to have been either $5,000 or $7,000. It is of interest to note, both in connection with the disputed value of the corporate assets and the claims of the two younger brothers for an inheritance interest of 5 shares of stock each, that petitioner apparently purchased 3 shares of Lakeland stock in 1959 for a total of $300, giving 3 promissory notes to the corporation totaling that amount, which promissory notes constitute part of the corporate assets. Subsequent promissory notes of petitioner and objector in 1961, each note apparently for $3,500 in payment for 10 shares of stock appraised at $350 per share, are secured by pledges of only 1 share of stock. Some dispute exists between petitioner and objector as to a few other shares, but resolution of such dispute would not resolve any issue controlling in this case.
[5] Objector asserts a like understanding, although such affirmation of an understanding is at this time obviously self-serving. In a contemporaneous proceeding between the disputants, in which objector demanded access to the corporate records prior to the dissolution hearing, objector stipulated in open court that petitioner and he were the "sole stockholders of said corporation." The alleged understanding of the younger brothers, on the other hand, is not inherently improbable in view of the fraternal relationship of the affiants and the method by which their father's stockholding was acquired by the two older brothers.
[6] Appellant's brief states that Walter and Theodore moved to intervene in the dissolution proceedings but that the motion was denied. The record does not reflect that such a motion was before the court and, for all that appears, the affidavit of the brothers was presented by objector in his own interest. A potential question not raised by the parties, and accordingly not decided by us now, is whether Walter and Theodore might under these circumstances be deemed indispensable parties. McAndrews v. Krause, 245 Minn. 85, 94, 71 N.W.2d 153, 159, 53 A.L.R.2d 312, 321, defined "indispensable parties" in the language of Shields v. Barrow, 58 U.S. (17 How.) 130, 139, 15 L.Ed. 158, 160, as:

"Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."
The court there added:
"This test is not an absolute one, however, and a determination of who is an indispensable party involves a great many considerations, and the decision must rest upon the facts of each particular case."
[7] Mismanagement, fraud, or abuse of authority are independent grounds for involuntary dissolution pursuant to § 301.49(3). Objector's main claim on this score is that the corporation, during his absence in military service, sold a tract of land for $250,000, in which Lakeland had an equity of $48,500 and that Lakeland's attorney-director was a director of both the selling and buying corporation. Lakeland paid its attorney-director $17,500 and petitioner $2,500 for services performed. The record, however, would tend to establish that the attorney acted without conflict of interest and upon full disclosure of his interest. The record indicates, further, that objector was fully informed both at that time and upon his return from military service and that he ratified the transaction. Although allegations such as these, if established as fact, might constitute grounds for dissolution under the statute, objector is obviously not asserting them for that purpose.
[8] See, Barrett v. Smith, 183 Minn. 431, 237 N.W. 15; Butler v. Butler Brothers, 186 Minn. 144, 242 N.W. 701.
[9] This would be in addition to the admitted indebtedness to the corporation of both petitioner and objector for loans from the corporation, noted in footnote 2, supra.
[10] The court's separate memorandum attached to the order, quoted here in substantial part, does indicate what the court decided and what it did not decide, and the rationale for its order:

"The only asset of the corporation, aside from obligations owing to it by the two named shareholders, is a tract of land in Anoka County on which the present taxes and special assessments are approximately $2,269.00. An annual income of $450.00 accrues to the corporation by reason of a billboard erected on such land.
"There have been no meetings of the directors or shareholders since 1963.
"David Anderson does not deny that the dissension between himself and the petitioner has made it impossible for the corporation to function but he opposes the petition on the ground that no losses are accruing to the corporation because the yearly increase in land value of the property held by the corporation is as great as, or greater than, the real estate taxes and special assessments imposed thereon.
"He also opposes the petition on the ground that at the time that he and petitioner acquired their respective shares, it was agreed that two younger minor brothers, Walter R. Anderson and Theodore C. Anderson, were entitled to the same number of shares as petitioner and objector and that it was agreed that such shares as were acquired would be shared equally with such younger brothers. He then goes on to state that this being so, petitioner only owns one-quarter of the outstanding shares and the objector and the two younger brothers own three-fourths of the outstanding shares and that, as the two younger brothers will join with objector, they can operate the corporation to their liking and opposition by the petitioner herein would no longer prevent the corporation from operating.
"The flaw in the latter argument of the objector is simply the fact that no one has yet established the right of the brothers to a portion of the shares held by the petitioner and objector. Furthermore, that question is not before this Court on the petition now under consideration. It is a matter of separate and distinct trial and this Court cannot assume that the younger brothers will prevail, nor has it the right to assume that if they do prevail, that they will throw in their lot with the objector here and against the petitioner, although it does appear from the affidavit executed by the two younger brothers that that is their present intention. During the time it would take to establish the right, if any, of the younger brothers to a portion of the stock held by petitioner, and objector, the corporation is simply unable to act.
"The Court is of the opinion that the petition fully meets the provisions of Minnesota Statutes 301.49 in two of the five grounds for involuntary dissolution set forth in that the objects of the corporation have wholly failed and that there is internal dissension and that two or more factions of the shareholders in the corporation are so deadlocked that its business cannot longer be conducted with advantage to its shareholders.
"For the foregoing reasons, the petition has been granted." (Italics supplied.)
[11] The statutory ground essentially in issue is the last italicized language of the memorandum, which is in the words of § 301.49(4). The nonitalicized language immediately preceding it is language taken, in part, from § 301.49(2). The court's memorandum, unlike either the allegations of the petition or the findings in its order, states that the corporation's objects "have wholly failed," which, to the extent it constitutes a finding, would have doubtful support in the record. On the other hand, the court's order, unlike either the petition or its memorandum, seems to find that "the objects of the corporation have been abandoned," again with doubtful support on this record. To the extent that the order recites that "accomplishment [of the corporate objects] is impracticable" it is but another way of saying that the business "cannot longer be conducted with advantage." In any event whether the objects of the corporation "have wholly failed" or whether they "have been abandoned or their accomplishment is impracticable," it is only, in the terms of § 301.49(4), because of deadlock.
[12] Thwing v. McDonald, 134 Minn. 148, 156 N.W. 780, 158 N.W. 820, 159 N.W. 564; Green v. National Advertising & Amusement Co., 137 Minn. 65, 162 N.W. 1056, L.R.A.1917E, 784; Owens v. J. L. Owens Co., 161 Minn. 6, 200 N.W. 845. See, also, In re Hedberg-Freidheim & Co., 233 Minn. 534, 539, 47 N.W.2d 424, 427; 3 Clark, Receivers (3 ed.) § 700 (a) and (b).
[13] See, Lowell v. Doe, 44 Minn. 144, 46 N.W. 297; Northwestern Nat. Bank of Minneapolis v. Mickelson-Shapiro Co., 134 Minn. 422, 425, 159 N.W. 948, 949, wherein the court indicated that it would refrain from appointing receivers pendente lite when the result would virtually constitute dissolution, recognizing that authority to dissolve corporations is "wholly statutory" but that the court nevertheless has the general equity power to do so, just as for an individual, the statute being "a recognition, and not a limitation, of the customary equity jurisdiction."
[14] See, also, Straus v. Straus, 254 Minn. 234, 94 N.W.2d 679, as it relates to dissolution of partnerships.
[15] Owens v. J. L. Owens Co., supra (corporate dissolution), Straus v. Straus, supra (partnership dissolution), 3 Clark, Receivers, supra, § 748(a).
[16] See, also, Albrecht v. Diamon, 125 Minn. 283, 146 N.W. 1101; Barrett v. Smith, 183 Minn. 431, 444, 237 N.W. 15, 20.
[17] See, Annotation, 13 A.L.R.(2d) 1260, 1262, 1267.
[18] Owens v. J. L. Owens Co., 161 Minn. 6, 9, 200 N.W. 845, 846, expressed the function of a receiver as being to protect property or property rights from "imminent" danger of loss.
[19] This would be a claim, asserted in a separate action, for specific relief or for damages. See, 4 Dunnell Dig. (3 ed.) § 2035 and the following cases cited there: Milnor v. Home Sav. & Loan Assn., 64 Minn. 500, 67 N.W. 346; Falk v. Dirigold Corp., 174 Minn. 219, 219 N.W. 82; First Nat. Bank & Trust Co. of Minneapolis v. Malerich, 193 Minn. 626, 259 N.W. 546.
[20] Swogger v. Taylor, 243 Minn. 458, 68 N.W.2d 376.