WILLIAM W. ELLIS v. CIVIC IMPROVEMENT, INC.

No. 7417SC764

(Filed 25 November 1974)

1. **Corporations § 28— inability to conduct business to advantage of all shareholders — liquidation proper**

Under G.S. 55-125(a)(1) irreconcilable deadlock of the directorate or shareholders is not sufficient basis for an order of liquidation with-

Ellis v. Civic Improvement, Inc.

out a supported finding or conclusion that the shareholders are so deadlocked that the corporation's business can no longer be conducted with advantage to all the shareholders.

2. **Corporations § 28— building sole asset of corporation — control in one director — liquidation proper**

In an action for liquidation of a corporation where the evidence tended to show that the corporation's assets consisted of a building designed for use by doctors and dentists, that respondent set his own rent for use of the entire building at the same amount he was paying in 1968 for two-thirds of the space, that petitioner was unable to cause a change since he had not participated in management since 1968, and that a meeting of the Board of Directors would be merely an exercise in futility, such evidence was sufficient to support the trial court's conclusion that the business of the corporation could no longer be conducted to the advantage of all the shareholders.

APPEAL by defendant from *Rousseau, Judge,* 20 May 1974 Session of Superior Court held in ROCKINGHAM County. Heard in the Court of Appeals 17 October 1974.

Petitioner instituted this action seeking liquidation of the corporate respondent under the provisions of N.C.G.S. 55-125(a) (1) and (4). He alleged that he is the owner of 50% of the stock of the respondent and that the remaining 50% is owned by Thomas B. Clay; that no stockholders' meeting had been held for a period of more than five years; that no directors or officers of the corporation had been elected since 1968; that no accounting or reports had been made to petitioner as required by the corporation's by-laws; that Clay had had sole control and management of the corporation since 1968 and petitioner had had no voice in its management; that the corporation owns a building reasonably worth $40,000 which houses a medical clinic in Mayodan, N. C.; that the building is used and occupied by Clay; that the rights and interests of petitioner in the corporation have not been protected; that the petitioner and Clay are deadlocked in voting power, and that the continued existence of the corporate respondent will severely damage and impair the rights and interests of petitioner-stockholder. He prayed "That Civic Improvement, Inc., the corporate respondent, be liquidated under the supervision of the Court as provided by N.C.G.S. 55-125(A)(1) and N.C.G.S. 55-125(A)(4) as such action is reasonably necessary for the protection of the rights and interest of the petitioner shareholder and the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, so that the business can no longer be conducted to advantage of all shareholders."

Respondent answered, admitting that petitioner and Clay each own 50% of the stock of Civic Improvement, Inc.; that there have been no shareholders' meetings for five years; that no directors or officers have been elected since 1968; and that no accounting or reports have been delivered to petitioner during that time. All other allegations were denied.

The matter was heard by the court without a jury. After all the evidence had been presented the court made the following findings of fact:

"(1.) That the respondent is a North Carolina corporation having its principal place of business in the town of Mayodan, Rockingham County, North Carolina.

(2.) That the defendant corporation's only asset is a lot and building, which building contains approximately 1,800 square feet of rental space, suitable primarily for doctors' and dentists' offices; that this lot is located in the town of Mayodan.

(3.) That in 1966 the petitioner, Dr. William W. Ellis, and Dr. Thomas B. Clay became the sole stockholders of said corporation, each owning fifty per cent of the stock; that at the time of the purchase of said stock the corporation borrowed $20,000.00 and each stockholder gave a note to the corporation in the approximate amount of $10,000.00 each.

(4.) That each stockholder and his respective wife was elected to the Board of Directors; that Dr. Clay was elected President of the corporation and Dr. Ellis was elected Treasurer of the corporation; that no official meeting of the Board of Directors or stockholders has been held since the reorganization of the corporation.

(5.) That the two stockholders were to use the building to carry on their profession, Dr. Clay being a medical doctor and Dr. Ellis being a dentist; that each of the stockholders was to pay rent to the corporation which in turn was to pay all utilities, taxes, insurance, upkeep, and the mortgage given to secure the $20,000.00 that was originally borrowed; that Dr. Ellis rented approximately 600 square feet for his dental office and paid $180.00 per month as rent; that Dr. Clay rented approximately 1,200 square feet for his medical office and paid $360.00 per month as rent.

(6.) That there was no written or oral lease or agreement as to how long each of the stockholders was to lease said office space.

(7.) That during the year of 1968 Dr. Ellis moved from the Town of Mayodan to the Town of Chapel Hill where he now maintains his dental practice; that since moving to Chapel Hill Dr. Ellis has not leased any portion of said building nor paid any rent to the corporation except as ordered in a prior Judgment heretofore entered in this court; that Dr. Clay is now using almost the entire building for his medical office and has continued to pay the same monthly rental as originally agreed, to wit: $360.00 per month.

(8.) That the two stockholders have talked from time to time about a buy or sell agreement, but have not been able to agree on any definite terms; that each stockholder stated that he did not call a meeting of the Board of Directors because each felt that such a meeting would be useless inasmuch as they could not agree and that such a meeting would be a waste of time.

(9.) That since Dr. Ellis's departure in 1968 Dr. Clay has controlled and operated the corporation, that is Dr. Clay has paid the utilities, taxes, insurance and upkeep, has employed an accountant to file income taxes, and has set his monthly rent in the amount of $360.00; that Dr. Clay has not consulted Dr. Ellis on any of these matters nor has Dr. Ellis attempted to exert any control or say-so over the corporation.

(10.) That all monies received by the corporation have been spent for corporate purposes; that Dr. Ellis has received nothing from the corporation since 1968.

(11.) That all of the necessary parties to this proceeding are now properly before the court.

(12.) That the petitioner has prayed the court to dissolve the corporation under the provisions of G.S. 55-125 (a) (1) ; that no other relief has been prayed for by either party."

Based upon the foregoing findings of fact the court concluded "[t]hat the Board of Directors of the defendant corporation are (sic) deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock so

that the business of the corporation can no longer be conducted to the advantage of all of the shareholders." The court appointed a permanent receiver to liquidate the corporation and required of him a surety bond. Respondent gave notice of appeal in which he excepted to each of the findings of fact and to the signing of the judgment.

*Clark M. Holt for petitioner appellee.*

*Harrington, Stultz and Maddrey, by Joseph G. Maddrey, for respondent appellant.*

MORRIS, Judge.

Although appellant states in its notice of appeal that it "excepts to each of the Findings of Fact and the signing of the Judgment," no exceptions appear anywhere in the record. No. (1) under "Exceptions and Assignments of Error" reads as follows:

"(1) For his first exception and assignment of error, the Defendant Appellant says His Honor erred in ruling that the findings of fact supported his conclusion of law that pursuant to N.C.G.S. 55-125(a)(1) the Board of Directors of the Defendant Corporation was deadlocked in the management of the corporate affairs. Furthermore Defendant Appellant contends the evidence does not support such a finding of fact."

Nos. (2) and (3) are similar. No. (2) refers to the court's conclusion that the shareholders were unable to break the deadlock and No. (3) to the conclusion that the business can no longer be conducted to the advantage of all the shareholders. Even though the question of whether there is competent evidence to support the findings of fact is not before us, our review of the evidence convinces us that the findings of fact are supported by competent evidence.

We turn then to the question of whether the findings are sufficient to support the court's conclusions. G.S. 55-125(a)(1) provides:

"The superior court shall have the power to liquidate the assets and business of a corporation in an action by a shareholder when it is established that: The directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, so that

Ellis v. Civic Improvement, Inc.

the business can no longer be conducted to the advantage of all the shareholders; . . . "

[1]   As a general rule, the court would have no power, absent statutory direction, to order the dissolution of a corporation simply on the grounds that there was a deadlock or dissention among the directors or stockholders. 19 Am. Jur. 2d, Corporations, § 1610. Under the statutory authority upon which petitioner relies, irreconcilable deadlock of the directorate or shareholders, as here, is not sufficient basis for an order of liquidation without a supported finding or conclusion that the shareholders are so deadlocked that its business can no longer be conducted with advantage to all the shareholders. Robinson, North Carolina Corp. Law, 2d Ed., §§ 29.7-29.9 (1974); *Re Lakeland Development Corp.*, 277 Minn. 432, 152 N.W. 2d 758 (1967). See also 13 A.L.R. 2d 1266 and cases there cited.

[2]   It seems obvious that if Dr. Clay continues to set his own rent for the entire building at the same amount he was paying in 1968 for two-thirds of the space, the corporation cannot be operated to the advantage of *all* the stockholders. Petitioner is unable to cause a change by reason of the fact that he has not participated in management since 1968, and the undisputed evidence is that a meeting of the Board of Directors would be merely an exercise in futility. Though the court did not so find, the undisputed evidence was that there were four directors— petitioner and his wife and Dr. Clay and his wife. Both petitioner and Dr. Clay testified that neither would vote for a fifth director unless that fifth director would vote with him on all questions. The election of a fifth director is, therefore, a virtual impossibility.

We note that the court could have made, from the evidence, other findings of fact which would have added support to his conclusions. Nevertheless, although the findings made are minimal, we are of the opinion that they are sufficient to support the court's conclusions.

It appears that the most practical solution to this dilemma is the appointment of a receiver to proceed with the liquidation of the corporation as the only possible equitable manner of operation to the advantage of all the stockholders.

Affirmed.

Judges HEDRICK and BALEY concur.